THE STATE OF OHIO, APPELLEE, *v.* GASEN, APPELLANT.
THE STATE OF OHIO, APPELLEE. *v.* ROSENWALD, APPELLANT.

(No. C-75418—Decided May 17, 1976.)

*Mr. Thomas A. Luebbers, Mr. Paul J. Gorman* and *Mr. J. Anthony Sawyer,* for appellee.

*Mr. Linden Beck,* for appellant Richard C. Gasen.

*Mr. George Clark,* for appellant Peter Rosenwald.

*Mr. Bruce I. Petric* and *Mr. Simon Lazarus, Jr.,* for amicus curiae, the Cincinnati Bar Association.

*Per Curiam.* These causes came on to be heard upon the appeal; the transcript of the docket and journal entries and the original papers from the Hamilton County Municipal Court; the transcript of the proceedings; the assignments of error; the briefs of the parties; the brief of the Cincinnati Bar Association, *amicus curiae*; and the arguments of counsel.

At 10:31 a. m. on August 1, 1975, a judge of the Hamilton County Municipal Court called the case of Marjorie and William Stovall for a preliminary hearing on a felony charge. The Stovalls were, according to the record, repre-

sented by attorneys from the Public Defenders' office who were not, however, present in court when the case was called.

As a result of such attorneys being absent, the judge asked if the city prosecutor could "* * * dig up a public defender?"

Shortly thereafter, Richard Gasen, a public defender and an appellant herein, although not the attorney of record for the Stovalls, entered the courtroom and was summarily appointed by the court to represent the Stovalls. Gasen declined to accept such appointment, objecting on the grounds that the Stovalls were already represented by other attorneys and that he (Gasen) had neither a file regarding the case, nor an opportunity to confer with the Stovalls. Gasen further stated that his intervention at that juncture would, in effect, deprive the Stovalls of their Sixth Amendment right to effective representation of counsel.

The trial court rejected Gasen's objections and ordered him to proceed with cross-examination, prompting Gasen to again refuse. At 10:40 a. m., Peter Rosenwald, an appellant and a public defender, but not an attorney of record with respect to the Stovalls, entered the courtroom, whereupon the court stated:

"Mr. Rosenwald, you are appointed to defend William Stovall and Mr. Gasen is representing Marjorie Stovall. Just come forward and do the best you can with cross-examination."

Both Gasen and Rosenwald refused on the grounds that to do so would constitute violations of the Code of Professional Responsibility and would deny the Stovalls effective representation of counsel. The court again rejected the attorneys' objections, stating:

"Now, I want to proceed. I'm appointing each of you. This is not a case where we decide their innocence or guilt. All we're deciding is whether to proceed with prosecution. You don't have to know anything about the case to cross-examine."

Upon their continued refusal to represent the Stovalls,

both Gasen and Rosenwald were incarcerated pending a hearing on a charge of contempt for refusal to obey the court's order. The contempt hearing commenced at 11:43 a. m., each of the appellants making a statement apologizing to the judge, but reiterating their position relative to the Stovalls. The court thereupon found each attorney in contempt of court and sentenced each according to law.

Gasen and Rosenwald present, respectively, five and six assignments of error for our consideration on these appeals. Although various arguments are made by the appellants in support of their several assignments of error, we have distilled these contentions into a single issue; namely, the judgment is contrary to law. We will therefore apply the arguments presented by the appellants and those advanced by the Cincinnati Bar Association, in its *amicus curiae* brief, to that solitary issue.

The argument seeming most germane to us pertains to appellants' contention that they were held in contempt for refusing to violate the Code of Professional Responsibility. Canon 6 of the Code provides, in EC 6-1, that:

"Because of his vital role in the legal process, a lawyer should act with competence and proper care in representing clients. He should strive to become and remain proficient in his practice and should accept employment only in matters which he is or intends to become competent to handle."

EC 2-30 provides in pertinent part that:

"Employment should not be accepted by a lawyer when he is unable to render competent service * * *. If a lawyer knows a client has previously obtained counsel, he should not accept employment in the matter unless the other counsel approves or withdraws, or the client terminates the prior employment."

Clearly, the ethics of the legal profession demand that any attorney, private or public, decline to represent a party when such attorney is unable, for valid reasons, to fully and adequately prepare such party's case, or when such party is already represented by competent counsel. Failure of an attorney to *decline* to perform such representation

may result in disciplinary measures being taken against him. DR 6-101.

In the cases at **bar,** both the appellants, the court, and the prosecutor were aware that the Stovalls were already represented by staff members from the Public Defender's office. Such prior representation had not terminated, nor had original counsel formally approved of permittting Messrs. Gasen and Rosenwald to intervene on their behalf. Moreover, the record is replete with assertions by the appellants that they were utterly unprepared to offer effective representation to the Stovalls.

It cannot be gainsaid that where, as here, a court summarily appoints counsel to represent an indigent defendant who is already represented by competent counsel, and where such substitute counsel is afforded neither information relative to the charges against the defendant, nor given the opportunity to confer with the defendant, the court has forced upon the interim counsel the alternative of rendering ineffective assistance of counsel, conceivably waiving or overlooking the accused's possible defenses, or being held in contempt of court for failure to perform such representation. The court's assertion to appellants that "you'll be excused of any problems" would inevitably be meaningless in a later appellate proceeding, for by the time such cause reached an appeal on the merits, defects in prior preliminary proceedings would arguably have been waived and would no longer be justiciable issues upon review. Aside from the questions raised by the nature of a preliminary hearing, no attorney may be a party to and acquiesce in an illegal order of the court and then revive and raise such illegal order as error on appeal. The problem herein is thus magnified since only through a refusal by Gasen and Rosenwald to represent the Stovalls could such objection be preserved. The cause *sub judice* may thus be distinguished from those authorities cited by appellee dealing with instances where the error inherent in attempting to enforce an illegal order may be corrected on appellate review.

This Court of Appeals, in *In re Schott* (1968), 16 Ohio

App. 2d 72, vacated a contempt conviction against a municipal prosecutor on the grounds that the order of the trial court did not harmonize with the mandates of the law as interpreted by a superior court. The prosecutor there refused to comply with an order of the municipal court that he provide a defendant with a bill of particulars, basing such refusal on a case decided by the Court of Appeals for the First Appellate District of Ohio. It was argued in *Schott, supra*, as is argued herein, that the right of due process of law is vested in the defendant and not in counsel. This court stated, at page 74, however, that:

"We view the instant case not as one broaching a question properly to be decided upon appeal but one bringing before us the personal rights of the petitioner himself. His right to protection from deprivation of his liberty is completely separable from the merits of the case in which the petitioner was acting as solicitor representing the people."

In the instant case, therefore, the right of the appellants to due process of law was a personal right, separable from the rights of the Stovalls. Moreover, by refusing to recognize the appellants' responsibilities and obligations under the Code of Professional Responsibility, which was adopted by the Supreme Court of Ohio in 1970, the trial court, in effect, ignored the dictate of *Schott* that "* * * the ground, principle, or reason of a decision made by a higher court is binding authority on the inferior court." This court concluded in *Schott* that an inferior court "* * * whatever may be its own convictions, must in the discharge of its functions be governed by the settled maxims of law and limit itself as such permit and sanction. An arbitrary refusal to do so is a denial of due process of law."

We hold that the trial court erred as a matter of law in refusing to recognize the appellants' responsibilities under the Code of Professional Responsibility* and con-

---

*While we have elected to base this decision on the clear and obvious violation by the trial court under the facts of the case of appellants' duties under the Code of Professional Responsibility, a caveat is in order: this Court should not be understood as holding that

clude accordingly that the finding of contempt rendered below is contrary to law. Such finding being contrary to law, it is the order of this court that the judgment of the Hamilton County Municipal Court be reversed and the appellants discharged herewith.

*Judgment reversed.*

SHANNON, P. J., PALMER and KEEFE, JJ., concur.

---

an attorney may necessarily avoid the consequences of a refusal to obey a direct order of a trial court simply because his understanding of his personal or professional duties may differ from that of the court. *State, ex rel. Shroder,* v. *Shay,* 3 N. P. (N. S.) 657. An officer of the court must always be held to disobey such instructions at his peril, and must understand that his justification for doing so will be subjected to the closest scrutiny and will be sustained only where it may be fairly concluded that no other course was reasonably available to him, as here. Where, for example, complete relief from unjustified, unreasonable, or illegal orders may be accorded the aggrieved parties (whether counsel, his clients, or both) upon direct appeal, we take it that the burden would be heavy indeed to sustain a refusal to obey.

The overriding obligation of the trial judge to superintend the business of his court in a lawful and expeditious manner, and to control and direct the officers of the court toward the accomplishment of that end, requires that he be given substantial discretion in the governance of proceedings before him, a discretion which is always subject to review for prejudicial abuse. With the existing pressures of time and numbers at every level of courts, it is difficult to conceive that the system may be made to function under any other rule. Our discussion today should not be taken to represent any retreat from adherence to that principle.