In re Sherlock, Alleged Contemnor, Appellant; City of Dayton *v.* Martin.

(No. CA 9854 — Decided
May 13, 1987.)

*Vincent P. Popp,* chief city prosecutor, for the court.
*Randall M. Dana,* public defender, and *Harry R. Reinhart,* for appellant.

Wolff, J. Karen M. Sherlock, an attorney with the Montgomery County Public Defender, was found in contempt and fined $250 on March 12, 1986, by a judge of the Dayton Municipal Court, for refusing to participate as defense counsel in the trial of an assault charge against her client, Michael J. Martin.

Prior to the city's presentation of evidence, Sherlock asked the court for a continuance, which was refused. Sherlock told the court she would not participate in the trial of Martin because she was unprepared and her

participation would amount to ineffective assistance of counsel. The trial court told Sherlock her refusal to participate would be treated as a contempt of court. Sherlock said she understood.

During direct examination of the city's first witness, Sherlock announced she would not be making defense objections because she was not participating, to which the trial judge responded that he would hold her in contempt if she refused to cooperate. After the city finished direct examination, Sherlock declined to cross-examine, and reiterated her refusal to participate, at which time the trial court found her in contempt, fined her $250, and ordered Martin's trial to be continued and reset.

Sherlock appeals and asserts three assignments of error:

"1. The trial court erred when it found appellant's conduct contumacious and sentenced her for contempt.

"2. The trial court erred when it held appellant in direct contempt of court for the reason that municipal courts have neither inherent nor statutory authority to punish alleged contempts.

"3. The trial court erred when it construed appellant's conduct as a direct rather than indirect contempt, and further erred in failing to provide appellant with a hearing on the merits."

The second and third assignments are not well-taken.

The suggestion that municipal courts have neither statutory nor inherent authority to punish contempts is astonishing.

R.C. 1901.13(A) provides in part that municipal courts have jurisdiction to "punish contempts" and "to exercise such other powers as are necessary to give effect to the jurisdiction of the court and to enforce its judgments, orders, or decrees[.]"

R.C. 2705.01, providing for summary punishment of direct contempt, by its terms, embraces all courts and all judges. Construing Sections 12136 and 12137 of the General Code, the predecessors to Sections 2705.01 and 2705.02 of the Revised Code, the Court of Appeals for Columbiana County stated in 1935:

"The judicial authority of the Municipal Court of the city of East Liverpool to punish contempts for disobedience of or resistance to a lawful writ, process, order, rule, judgment, or command of the court is expressly provided for in Sections 12136, 12137 *et seq.,* General Code, and such judicial authority is now so well recognized as to need no other citation of authority therefor." *McWhorter* v. *Curran* (1935), 57 Ohio App. 233, at 244-245, 25 Ohio Law Abs. 623, at 628, 10 O.O. 419, at 423, 13 N.E. 2d 362, at 367.

The following excerpt from *Hale* v. *State* (1896), 55 Ohio St. 210, at 213, 45 N.E. 199, at 200, disposes, to our satisfaction, of the contention that municipal courts, or any courts, are without inherent power to punish contempts:

"The difference between the jurisdiction of courts and their inherent powers is too important to be overlooked. In constitutional governments their jurisdiction is conferred by the provisions of the constitutions and of statutes enacted in the exercise of legislative authority. That, however, is not true with respect to such powers as are necessary to the orderly and efficient exercise of jurisdiction. Such powers, from both their nature and their ancient exercise, must be regarded as inherent. They do not depend upon express constitutional grant, nor in any sense upon the legislative will. The power to maintain order, to secure the attendance of witnesses to the end that the rights of parties may be ascertained, and to en-

force process to the end that effect may be given to judgments, must inhere in every court or the purpose of its creation fails. Without such power no other could be exercised."

Likewise, there can be no doubt that the behavior the trial court found contemptuous occurred in the presence of the court: In open court, with the trial judge and prosecutor prepared and ready for trial, Sherlock refused to participate.

Hence, if Sherlock was properly found to be in contempt, the question to which we next turn, the trial court was authorized to summarily impose punishment, without the hearing guaranteed for indirect contempt. See R.C. 2705.03. We agree with Sherlock that by virtue of the fine, she was held in criminal contempt. However, if her conduct was contemptuous, her conduct was certainly established beyond a reasonable doubt.

The first assignment of error is the most troublesome. It pits the lawyer's obligation to effectively represent his client against the trial judge's obligation to administer his docket, and the considerable latitude the trial judge must be accorded to fulfill that obligation.

Sherlock would have us address three broad issues. Because cases such as this turn on their particular facts, we choose instead to simply address the question of whether, on this occasion, the trial court erred in finding Sherlock in contempt and in imposing a fine.

Sherlock's client, Martin, was arraigned February 26, 1986, in the Dayton Municipal Court on charges of abduction, a felony, and assault, a misdemeanor. Bond was set at $5,000 cash on the felony charge and $100 cash on the misdemeanor charge. Martin apparently was released on bond February 26.

The assault case was scheduled for trial March 6, 1986, at which time the following occurred in open court:

"MS. WILSON (Prosecutor): Michael Jerome Martin, Case Number 86-CRB-1373, City vs. Michael Jerome Martin.

"MS. SHERLOCK: This is an assault charge that arose out of the same set of circumstances as a felony, an abduction charge. He is to be arraigned in front of Judge Kessler on the 18th of this month on the charge and Miss Koeller is his attorney there. What we'd like to do is postpone the misdemeanor matter until the felony is taken care of. The assault was supposed to have occurred during the course of the abduction.

"THE COURT: I don't mind resetting it. The part that concerns me is the indefinite time. I like a final disposition date. Are your witnesses here?

"MS. WILSON: We do have the Complaining witness here, Judge.

"THE COURT: Who is the Complainant?

"MS. WILSON: This is Lasonya D. Wilks.

"THE COURT: Do you understand what's being asked by Mr. Martin's lawyer? Apparently there are other charges which are felony charges pending against him. Those are more serious charges and the lawyer on behalf of Mr. Martin has requested that this case be continued until there is a determination on the more serious charge[s]. Do you have any objection to that?

"MS. WILKS: No.

"THE COURT: Then the matter will be rescheduled.

"MS. WILSON: I would request, though, that if this matter be rescheduled, due to the indefinite nature, that the defendant formally waive time.

"DEFENDANT: I would certainly do that.

"MS. SHERLOCK: I think the motion to continue is at the request of the Defendant. That obviously tolls the running of the time.

"THE COURT: Then what are you suggesting? How far in advance do we set this thing?

"MS. SHERLOCK: If his arraignment is the 18th of March, then it wouldn't even go to a scheduling conference until the middle of April which means the earliest trial date is the end of April.

"THE COURT: Well, in any event, I'll reset it and give him an opportunity to discuss the matter with Miss Koeller. Will she be handling the assault?

"MS. SHERLOCK: Yes.

"THE COURT: We'll reset it and give Mr. Martin an opportunity to let Miss Koeller handle the matter."

By order file-stamped March 7, 1986, the case was rescheduled for trial March 12, 1986, at 9:00 a.m. Sherlock, who received the trial notice March 10, appeared March 12 and requested a continuance, stating she was unprepared because she did not think, based on the March 6 proceedings, that the case would be reset so quickly, and that Martin had defense witnesses who had not been subpoenaed. The trial judge, noting that March 12 was the second scheduled trial date, and the inconvenience to the city's witnesses, stated he would not continue the case.

The dialogue that followed between the trial judge and Sherlock was as follows:

"MS. SHERLOCK: Your Honor, the defendant is not ready to go forward today and if the court insists on going forward, we'd like to state on the record our grounds for not participating.

"THE COURT: You may state on the record why you're not ready to go forward.

"MS. SHERLOCK: Judge, the incident in this case arose February 25, 1986. The complaint was filed the following day, February 26. The case was originally set for trial on Thursday, March 6. At that time, the Court granted a defense continuance.

"THE COURT: For what reason?

"MS. SHERLOCK: At that time, Your Honor, I requested a continuance on the grounds there was a companion felony case arising out of the same set of facts. My understanding was that the continuance was being granted until the felony had been resolved. From my discussion with the court, I understand now that I was mistaken in believing that the court granted an indefinite continuance. On Monday, March 10, I received notice setting this case for trial on today, Wednesday, March 12. In effect, that gave the defense two days to prepare its case; to subpoena its witnesses, to investigate the City's case and prepare its own defense. These [*sic*] two days notice is insufficient time for the defendant to adequately prepare and adequately be represented by counsel. Were the defendant forced to go forward today, his Constitutional rights would be violated. He would receive ineffective assistance of counsel. We're unable to subpoena our witnesses and we were unable to investigate the City's case and unable to even contact the defendant between the day I received the notice of trial, Monday, March 10, and the trial date, today, Wednesday, March 12. I attempted to contact the defendant, Michael Martin, on Monday afternoon and was unable to reach him. He does not have a telephone at his residence. I attempted to contact him at the telephone number of a friend which he had given me.

"For these reasons, Judge, we are unwilling to go forward today, knowing full well that participating in any trial would violate Mr. Martin's Con-

stitutional rights under both the Ohio and Federal Constitution[s].

"THE COURT: Well, let's see the Complaint. The Complaint was filed on February 26, apparently as a result of an incident that allegedly took place on the 25th of February, 1986. The defendant was arraigned on February 26 before Judge Mitchell. Bond was set. The record indicated that the defendant was in jail and we're obligated to set the case at the earliest, possible moment, keeping in mind that people are required to prepare for trial and subpoena witnesses. The case was set for trial on March 6 and at that time a continuance was granted at the request of the defendant. Granted, that some mention was made that there were other cases pending, a felony, and you may have had a misunderstanding about the resetting of the case. But in any event, the case was reset to give the defendant and his counsel an opportunity to prepare. It's now the 12th, six days later, and we're here for trial and you're saying you're still not prepared. Now, number one, you should have been prepared on the 6th, granted that you were not, you know, you're going to have to get prepared and try the case at a later date. I'm not going to continue the case. Whether or not that you are prepared, you'll have to make that decision yourself. I think that the defendant has an opportunity to keep in touch with your office and counsel. You certainly knew, and the defendant knew, on the 6th day of March, that the case would be rescheduled for trial and I think you should have been prepared on March 6, but certainly you have had, and the defendant, both have had time to get together and prepare for this trial. Now, granted, I don't know when your office received your notice but again, the file reflects the defendant is in jail and we're obligated to set these things as quick[ly] as possible. Now we have

three witnesses here subpoenaed here by the prosecution who have taken off work for the second time. I think it would be highly unfair to require those people to come back and miss more work when they are here and ready to go forward. Now if you feel that the defendant has not had sufficient opportunity to subpoena his witnesses, I disagree with that, but I'll give you the benefit of the doubt on that. The facts remain that the witnesses have not been subpoenaed, for whatever reason, but we will go forward with the case. I will permit the prosecut[or] to put on his case. I will permit you to put on the defendant if that's your desire today. I will continue the case at a later date to give the defendant an opportunity to bring in the further witnesses that he may have or if you don't want the defendant to testify here today, I will continue the case to a later date after the Prosecutor puts on his case, but we're going forward today.

"MS. SHERLOCK: May I just add something into the record?

"THE COURT: Yes.

"MS. SHERLOCK: Mr. Martin was arraigned on February 26. The court file, I assume, indicated he had not bonded out. He did, in fact, make bond that day and has been out on bond since February 26. I understand the case was set quickly for trial because the court file indicated he was in jail. In fact, he has not been. I first received notice of this case in my office on March 3 and the case was set for trial on March 6. That did not leave me adequate time to contact Mr. Martin through the mail, therefore, I was left with contacting him through friends of Mr. Martin. I was unable to do that. Therefore, I did not speak with Mr. Martin about this case until last Thursday when it was originally set for trial, March 6. At that time, we were granted a continuance. Had I known what date the trial was to be reset for,

perhaps I could have subpoenaed witnesses in time for today's trial, but not getting notice until Monday, two days before today, that did not leave me adequate time to subpoena witnesses for the trial this morning.

"THE COURT: Did you try?

"MS. SHERLOCK: I couldn't subpoena them —

"THE COURT: Did you try?

"MS. SHERLOCK: No, I didn't, because I had to get the names and addresses from Mr. Martin. I also could not get them served that quickly.

"THE COURT: I disagree with that, but nevertheless —

"MS. SHERLOCK: I attempted to contact Mr. Martin this Monday when I received notice the case was set for trial and again was unable to. I did not have time to get in contact with him through the mail and was unable to reach him by phone because he does not have a phone at his residence.

"For these reasons, we are inadequately prepared today to go forward.

"THE COURT: Again, repeating myself, on the 27th or 26th day of February, 1986, both the defendant and the Public Defender's Office knew they were going to be representing the defendant in this case. Now I can agree that there may be apparently some new procedures that should be developed in the Public Defender's Office as far as getting these cases to the proper counsel who is going to try the thing but nevertheless, the question is due process and when the defendant and the Public Defender's Office representative is [sic] before the court on February 26, the defendant and the Public Defender's Office both know they're going to be representing the defendant. The case is set for March 6 and it's continued to give the defendant and the Public Defender's Office an opportunity to be prepared at a later date, and now it's the 12[th]. On the day of the trial you make it known

that you're not prepared and I am not going to have these people miss further work and come back. I will give you and the defendant the benefit of the doubt, and I'll continue the defendant's case after the prosecution has rested their [sic] case, but I'm going to give these people an opportunity to testify while they're here today. So the case will go forward.

"MS. SHERLOCK: We will not go forward, Judge. We will not participate.

"THE COURT: Are you saying you will not represent the defendant?

"MS. SHERLOCK: I'm Mr. Martin's attorney. I will, however, not participate in the trial today.

"THE COURT: If you fail to participate, I'll consider it a matter of contempt of court.

"MS. SHERLOCK: I understand that and I regret that that is the situation.

"THE COURT: For the record, we have two other attorneys here from the Public Defender's Office. Maybe one of them would want to represent —

"MS. SHERLOCK: Your Honor, I think that substituting counsel at this late date is [as] ineffective as sending me to trial at this time. Probably, more so.

"THE COURT: Well, I don't see why it would jeopardize you or the defendant to permit the Prosecutor to put on his case and continue the matter for the defendant to permit him to bring in witnesses later on.

"MS. SHERLOCK: Mr. Martin has a right to effective assistance of counsel throughout the entire trial.

"THE COURT: I understand that.

"MS. SHERLOCK: Were we to go forward and participate today, he would not receive effective assistance during the cross-examination phase. It's impossible.

"THE COURT: I don't understand why. You certainly have had this case since the 6th of March and you should know enough about it to cross-examine the Prosecutor's witnesses.

"MS. SHERLOCK: Well we don't, Judge.

"THE COURT: Well I'm going to order the case to go ahead. If you refuse to participate, I will consider it a matter of contempt of court and hold you in contempt of court.

"MS. SHERLOCK: I understand that."

After the city prosecutor questioned the first witness, and Sherlock refused to cross-examine, the court found Sherlock in contempt and fined her $250:

"THE COURT: Counselor, do you have any questions?

"MS. SHERLOCK: Your Honor, we can't question. We are not participating in the trial and it would violate Mr. Martin's rights to participate. I reiterate everything I said prior.

"THE COURT: You're saying you refuse to participate in this trial?

"MS. SHERLOCK: Yes, sir, I do.

"THE COURT: All right, the Court will hold you in contempt of court. The case will be continued. The Court feels that your action has amounted to a contempt of court and find[s] you in contempt of court. The Court will assess a penalty against you of $250.00. That is an amount that the Court feels should cover the salary and costs of these people, three witnesses — How many witnesses do you have?

"MR. SCACCIA (Prosecutor): Three witnesses, Judge.

"THE COURT: — to appear at this trial twice and the Court certainly feels it is your fault and your client's fault and by being here today and not being prepared, not requesting a continuance before these people were called in again, just coming into court and doing nothing until you get here and ask for a continuance at that time. The Court will assess a penalty of $250.00 against you and the case will be continued and reset."

In *State v. Gasen* (1976), 48 Ohio App. 2d 191, 2 O.O. 3d 156, 356 N.E. 2d 505, the Court of Appeals for Hamilton County considered a similar situation. In that case, a municipal judge ordered two public defenders — Richard C. Gasen and Peter Rosenwald — to represent two defendants named Stovall on a preliminary hearing that was to commence immediately. The two public defenders were strangers to the Stovalls and their case and they refused to participate, claiming that to do so would violate the Code of Professional Responsibility and the Stovalls' constitutional right to effective representation of counsel. The two public defenders were found in contempt and "sentenced * * * according to law." *Id.* at 193, 2 O.O. 3d at 157, 356 N.E. 2d at 507.

The court of appeals reversed, concluding after lengthy discussion:

"We hold that the trial court erred as a matter of law in refusing to recognize the appellants' responsibilities under the Code of Professional Responsibility and conclude accordingly that the finding of contempt rendered below is contrary to law. Such finding being contrary to law, it is the order of this court that the judgment of the Hamilton County Municipal Court be reversed and the appellants discharged herewith." *Id.* at 195-196, 2 O.O. 3d at 158-159, 356 N.E. 2d at 508.

Sherlock argues here that the trial court's order that she proceed with Martin's defense required her to violate her client's constitutional right to effective assistance of counsel and Disciplinary Rules 6-101 and 7-101 of the Code of Professional Responsibili-

ty. Although her brief is not specific, at oral argument, Sherlock's counsel stated that DR 6-101(A)(1) and (A)(2) and DR 7-101(A)(1) and (A)(3) are the Disciplinary Rules implicated by this case:

DR 6-101:

"(A) A lawyer shall not:

"(1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.

"(2) Handle a legal matter without preparation adequate in the circumstances."

DR 7-101:

"(A) A lawyer shall not intentionally:

"(1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law * * *.

"* * *

"(3) Prejudice or damage his client during the course of the professional relationship * * *."

Although DR 6-101(A)(1) and DR 7-101(A)(1) are of doubtful applicability, we agree with Sherlock that the trial court's order that she proceed with Martin's case March 12 required her to violate her professional obligation to Martin, both under the state and federal Constitutions and the Code of Professional Responsibility. DR 6-101(A)(2) and 7-101(A)(3).

We also agree with Sherlock that a fair reading of the March 6 proceedings justifies her stated belief that Martin's assault case would not be rescheduled for trial as soon as March 12, 1986.

By the same token, we agree with the trial judge that Sherlock, upon receiving the trial notice on March 10, could have and should have immediately contacted the court and prosecutor about a further continuance, rather than waiting to move for a continuance until March 12 when the city's witnesses were away from their jobs and in the courtroom.

We conclude that reversal is warranted in this case.

Sherlock reasonably concluded from the March 6, 1986 dialogue that the assault case would be set over until the felony had been disposed of. While we agree with the trial judge that he is not required to subordinate his docket to that of the common pleas court, we nevertheless agree with Sherlock that the March 6 dialogue gives the distinct impression that the assault case would be set over for several weeks. Given the glut of cases public defenders are expected to handle, it is reasonable to conclude that Sherlock would not have been actively preparing for the trial of Martin's case during the March 6-March 10 interim, and that two days' notice was, indeed, too little time for her to contact Martin, who had no phone, obtain the names and addresses of his witnesses and subpoena them into court, investigate the case, and prepare for trial.

The facts in this case are not as compelling as those in *Gasen* where the two public defenders were complete strangers to the Stovalls and their case, and were ordered to proceed immediately. Nevertheless, Sherlock, through no fault of her own, was as incapable of rendering effective assistance of counsel as were Gasen and Rosenwald. While we commend the trial judge for his willingness to continue the matter for the defense case after the city's witnesses were presented, we do not think this provided Sherlock with an out. She argued that due to her lack of preparation, her client would still be denied effective representation at the cross-examination stage, an argument with which we agree.

Concluding, as we must, that the contempt judgment based on Sher-

lock's refusal to participate was, given the facts of this case, contrary to law, we hasten to adopt the caveat of the court of appeals in *Gasen*:

"While we have elected to base this decision on the clear and obvious violation by the trial court under the facts of the case of appellants' duties under the Code of Professional Responsibility, a caveat is in order: this Court should not be understood as holding that an attorney may necessarily avoid the consequences of a refusal to obey a direct order of a trial court simply because his understanding of his personal or professional duties may differ from that of the court. *State, ex rel. Shroder,* v. *Shay,* 3 N. P. (N.S.) 657. An officer of the court must always be held to disobey such instructions at his peril, and must understand that his justification for doing so will be subjected to the closest scrutiny and will be sustained only where it may be fairly concluded that no other course was reasonably available to him, as here. Where, for example, complete relief from unjustified, unreasonable, or illegal orders may be accorded the aggrieved parties (whether counsel, his clients, or both) upon direct appeal, we take it that the burden would be heavy indeed to sustain a refusal to obey.

"The overriding obligation of the trial judge to superintend the business of his court in a lawful and expeditious manner, and to control and direct the officers of the court toward the accomplishment of that end, requires that he be given substantial discretion in the governance of proceedings before him, a discretion which is always subject to review for prejudicial abuse. With the existing pressures of time and numbers at every level of courts, it is difficult to conceive that the system may be made to function under any other rule. Our discussion today should not be taken to represent any retreat from adherence to that principle." *Id.* at 195-196, 2 O.O. 3d at 158-1 , 356 N.E. 2d at 508, fn.

In this case, direct appeal would have been an inadequate means of obtaining relief from the trial court's improper refusal to grant a continuance because it would be well-nigh impossible to demonstrate from the record that cross-examination was inadequate due to lack of opportunity to investigate and prepare.

We are concerned, as was the trial judge, with Sherlock's failure to communicate with the court and prosecutor immediately upon her receipt March 10 of the trial notice. However, the approach that would have better served the needs for both docket control and effective assistance of counsel would have been the requested continuance coupled with contempt proceedings, if warranted, under R.C. 2705.02:

"A person guilty of any of the following acts may be punished as for a contempt:

"* * *

"(B) Misbehavior of an officer of the court in the performance of his official duties, or in his official transactions[.]"

While this approach would not have eliminated the case from the trial judge's docket, it would have discouraged future last-minute requests for continuances, and the attendant inconvenience to the participants. In the long run, this approach might also be the more efficient in terms of the total amount of attorney time, judicial time, and public money expended.

This case is a perfect example. Here, the trial judge, out of an obvious sense of fairness, ended up granting the continuance after Sherlock declined to cross-examine the city's first witness, so little was accomplished by ordering her to proceed. Whether Martin was once in jeopardy, as Sherlock

suggests on appeal, we need not discuss. Suffice it to say that attorney time, judicial time, and public money might well have been expended litigating the issue in the trial court and appellate court had Martin been further prosecuted for assault. (On April 7, 1986, the first degree misdemeanor assault charge was amended to a fourth degree misdemeanor disorderly conduct charge; Martin entered a plea of no contest, was found guilty, and received a fine of $100, a suspended ten-day sentence, and one year's unsupervised probation.)

We are not suggesting that there was a neat solution that would have (1) preserved Martin's right to effective assistance of counsel, (2) punished Sherlock for unnecessarily inconveniencing the trial court, prosecutor, and three complaining witnesses, and (3) disposed of a case on the trial judge's docket.

What we decide here is that under these particular circumstances, the trial court should not have ordered Sherlock to proceed with the trial of Martin's case. Sherlock's inconveniencing of the court could have been dealt with under R.C. 2705.02. She should not have been required to violate her duty to her client as the price of avoiding punishment for contempt.

The judgment of contempt is reversed; Karen Sherlock is discharged.

*Judgment accordingly.*

BROGAN and FAIN, JJ., concur.