CITY OF GARFIELD HEIGHTS, Appellee,

v.

WOLPERT, Appellant.

[Cite as *Garfield Hts. v. Wolpert* (1997), 122 Ohio App.3d 287.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 71329.

Decided Aug. 5, 1997.

*James McGrath IV,* Garfield Heights Prosecutor, and *Michael G. Ciaravino,* Maple Heights Prosecutor, for appellee.

*Jerome Silver & Associates* and *Michael L. Wolpert,* for appellant.

---

DYKE, Judge.

Attorney Michael L. Wolpert appeals from the judgment of the trial court which found him guilty of indirect contempt of court arising from his telephone calls to an acting judge. For the reasons set forth below, we affirm.

On November 3, 1995, Judge Kenneth Stralka of the Garfield Heights Municipal Court issued a contempt citation against Wolpert which commanded Wolpert "to show cause * * * as to why he should not be held in contempt of this Court's Order regarding contacting Acting Judge Beverly Briggs in * * * *City of Maple Heights -vs- Brenda Pence.*"

The matter was subsequently transferred to the Cleveland Heights Municipal Court. Wolpert waived his right to a jury trial, and the matter proceeded to a trial to the court on August 16, 1996.

The evidence demonstrated that Wolpert was retained to represent Brenda Pence on charges of stalking and telephone harassment that were pending in the Garfield Heights Municipal Court. This matter was tried before Acting Judge

Beverly Briggs. Acting Judge Briggs ultimately found Pence not guilty of stalking, but guilty of telephone harassment, and on October 11, 1995, she sentenced Pence to thirty days in jail.

Thereafter, on October 13, 1995, attorney Wolpert filed a motion in mitigation of fine and penalty with the court. Within this motion, Wolpert asserted that Pence was in danger of losing her employment. The record does not contain any entry ruling upon this motion, but Acting Judge Briggs testified that she denied the motion on the day after it was filed.

On October 18, 1995, Wolpert filed a Motion for Work Release/Alternative Motion for Staggering of the Sentence, in which he asserted that the Garfield Heights Municipal Court had previously permitted work release on an ad hoc basis, and that his client was a first offender who was facing loss of employment as the result of a continuous period of incarceration. The court denied this motion on October 25, 1995.

Acting Judge Briggs testified that attorney Wolpert began to call her private law office on or about October 13, 1995, "through the end of October into November, the very beginning of November, and he called on several occasions, many times." According to Acting Judge Briggs, Wolpert called her office on October 18, 1995, and left messages for her. He left approximately four messages for her on October 20, 1995, and approximately three or four messages on both October 23, 1995, and October 24, 1995.

Acting Judge Briggs further testified that on October 25, 1995, Wolpert called her law office and spoke to her secretary. The secretary, Janet Jacobs, became very upset, and Acting Judge Briggs then spoke to Wolpert. During this conversation, Wolpert explained that Pence's family was extremely agitated and that Pence stood to lose her job if forced to serve the continuous thirty-day sentence which Briggs had imposed. Acting Judge Briggs then explained that she thought that Pence deserved the sentence imposed and that she was not going to order early release.

On October 26, 1995, Wolpert filed a motion to serve remainder of the sentence on house arrest and issue credit for preconviction time served and good behavior. He then left messages for Acting Judge Briggs on October 26, 1995, and October 27, 1995. Thereafter, Acting Judge Briggs called Judge Kenneth Stralka and explained that despite informing Wolpert that she was not going to let Pence out of jail, Wolpert had continued to call her and that the calls were repetitive and disruptive. In response, Judge Stralka asked Acting Judge Briggs to direct future calls from Wolpert to him. Acting Judge Briggs's staff relayed this message to Wolpert, but he nonetheless called Briggs's office twice thereafter, and Briggs reported it to Judge Stralka.

On cross-examination, Briggs stated that she actually spoke with Wolpert only two or three times and that in one of the conversations, Wolpert stated that he would research the issue of whether work release could be authorized for Pence. Acting Judge Briggs further stated that she indicated that Pence should remain in jail, but she acknowledged that she reviewed each of Wolpert's motions, and did not just summarily deny them. Finally, Acting Judge Briggs acknowledged that Wolpert was not disrespectful, but was very insistent.

Judge Stralka testified that Acting Judge Briggs asked him to advise Wolpert to stop calling her office, and he agreed to do so. On November 1, 1995, Judge Stralka had a conversation with Wolpert in which he explained that Wolpert's incessant calls were disruptive and he informed Wolpert that if he did not cease and desist from calling the court, he would issue a contempt citation to him. Judge Stralka testified:

"I advised him that unless he stopped calling the court and Beverly Briggs * * * that I would issue a citation of contempt, because the court was receiving calls in the clerk's office which were disruptive to the clerk's office."

Thereafter, Acting Judge Briggs informed Judge Stralka that Wolpert had continued to call her office, and Judge Stralka then issued a contempt citation to him.

Judge Stralka acknowledged on cross-examination, however, that there was no indication that Wolpert was at any time mean or disrespectful in his dealings with the court personnel.

Following the presentation of the prosecution's case, Wolpert moved for acquittal pursuant to Crim.R. 29. The trial court denied the motion, and Wolpert then presented the testimony of Acting Judge Briggs upon cross-examination. Acting Judge Briggs testified that she was not angered by Wolpert's calls, but she saw no reason whatsoever for them.

Wolpert then testified that many of his clients lack financial resources so it is his practice to "take extra effort in postconviction matters." It is therefore common for him to move for mitigation of sentence and work-release privileges. He further explained that prior to filing the motions for home detention and good time credit for release, he researched these options in order to ascertain that these options were applicable to municipal courts. His subsequent calls to the court occurred after he was unable to obtain agreement from the Maple Heights prosecutor regarding Pence's release, and were made in order to have Acting Judge Briggs review his motions and rule upon them promptly. His key concern was that the period of Pence's thirty-day sentence would pass before the court made its ruling. Finally, Wolpert testified that he did not construe Judge

Stralka's telephone admonition to him to prohibit him from calling to ascertain whether there had been rulings upon his pending motions.

The trial court subsequently determined that Judge Stralka's command that Wolpert not make further contact with Acting Judge Briggs was "conveyed as an order of the court." The trial court further concluded that Wolpert had committed indirect contempt of court and fined him $250. Wolpert now appeals and assigns four errors for our review.

█ Wolpert's first assignment of error states:

"The allowance of defendant-appellant's counsel to withdraw without a hearing was clear error."

With this assignment of error, Wolpert asserts that the trial court erred and acted contrary to the rule of law set forth by this court in *Bennett v. Bennett* (1993), 86 Ohio App.3d 343, 620 N.E.2d 1023, when it failed to hold a hearing on the motion to withdraw representation which was filed by Wolpert's original counsel.

We note that *Bennett v. Bennett* does not mandate that a trial court hold a hearing upon motions to withdraw. Rather, the *Bennett* court explained:

"The purpose of DR 2–110(A)(1), 2–110(A)(2) and Loc.R. 7(A) of the Court of Common Pleas of Cuyahoga County, Division of Domestic Relations, is to assure that a client shall not be prejudiced as a result of the withdrawal of counsel.

" * * *

"This court, upon review of the record, cannot state with certainty that the appellant was not prejudiced by a lack of competent legal representation during the course of the hearing as held with regard to the motions to show cause. This is especially true, since the appellant stated specifically that he was not familiar with legal procedures and proceedings, nor was an inquiry made by the trial court into whether appellant desired new counsel or was insulated from foreseeable prejudice.

" * * *

"Therefore, the trial court abused its discretion in allowing appellant's trial counsel to withdraw prior to the hearing and then requiring the appellant to proceed without the benefit of counsel." *Id.* at 347, 620 N.E.2d at 1026,

█ Indeed, the general rule is that the trial court is vested with discretion as to whether to hold a hearing upon a motion to withdraw representation. *State v. Marinchek* (1983), 9 Ohio App.3d 22, 24, 9 OBR 23, 25–26, 457 N.E.2d 1198, 1200–1201,

In this matter, the record reveals that the trial court originally granted the motion to withdraw without a hearing. Thereafter, following objections by Wolpert, the trial court reconsidered the matter on July 22, 1996. Upon reconsideration, the court noted that it had permitted Wolpert's defense attorney to withdraw from the action while under the mistaken impression that Wolpert did not object. It then vacated its previous entry permitting counsel to withdraw, then determined, on reconsideration, that the motion should be granted and that Wolpert would not be prejudiced, since the motion to withdraw was filed one month prior to trial, and Wolpert had already conducted discovery in the matter. As the trial commenced, Wolpert did not object to the matter going forward and indicated that he was representing himself with "co-counsel," who later appeared and participated in the action. In short, the record is devoid of any evidence of prejudice resulting from the trial court's failure to hold a hearing. Thus, while a charge of contempt pursuant to R.C. Chapter 2705 requires, *inter alia*, an opportunity for the accused to be represented by counsel, *State ex rel. Seventh Urban, Inc. v. McFaul* (1983), 5 Ohio St.3d 120, 122, 5 OBR 255, 256–257, 449 N.E.2d 445, 447–448, we find no abridgment of that right herein and no abuse of discretion to result from the trial court's failure to hold a hearing on Wolpert's counsel's motion to withdraw from the matter.

The first assignment of error is overruled.

■ Wolpert's remaining assignments of error challenge the sufficiency of the evidence supporting the trial court's finding of indirect contempt of court and state as follows:

"There is inadequate evidence to support a finding of indirect contempt.

"If there was a cognizable order, compliance is inconsistent with defendant-appellant's obligation to his client and the legal system.

"With proper comparison of the case file contents with prosecution testimony, defendant's [Crim.R.] 29 motion should have been granted."

Within these assignments of error, Wolpert asserts that the trial court erred in finding him in indirect contempt of court, since he simply undertook to diligently represent Pence following her conviction.

R.C. 2705.02 sets forth acts which are in indirect contempt of court and provides in relevant part as follows:

"A person guilty of any of the following acts may be punished as for a contempt:

"(A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer[.]"

■ The purpose of contempt proceedings is to secure the dignity of the courts and the uninterrupted and unimpeded administration of justice. *Windham Bank v. Tomaszczyk* (1971), 27 Ohio St.2d 55, 56 O.O.2d 31, 271 N.E.2d 815, paragraph two of the syllabus; *Cramer v. Petrie* (1994), 70 Ohio St.3d 131, 133, 637 N.E.2d 882, 884–885, Trial courts have inherent authority to regulate the conduct of counsel appearing in specific proceedings before them. See, *e.g., Royal Indemn. Co. v. J.C. Penney Co.* (1986), 27 Ohio St.3d 31, 27 OBR 447, 501 N.E.2d 617, Further, it is the "obligation of the trial judge to superintend the business of his [or her] court in a lawful and expeditious manner and to control and direct the officers of the court toward the accomplishment of that end." *In re Sherlock* (1987), 37 Ohio App.3d 204, 525 N.E.2d 512,

■ It is also true, as Wolpert asserts, that a finding of contempt of court may be reversed where it is shown that the attorney is simply endeavoring to meet his or her responsibilities under the Code of Professional Responsibility. See *State v. Gasen* (1976), 48 Ohio App.2d 191, 2 O.O.3d 156, 356 N.E.2d 505; cf. *State v. Christon* (1990), 68 Ohio App.3d 471, 589 N.E.2d 53, Moreover,

■ "Attorneys have a right to be persistent, vociferous, contentious, and imposing, even to the point of appearing obnoxious, when acting in their client's behalf. An attorney may with impunity *take full advantage of the range of conduct that our adversary system allows.*" (Emphasis added.) *In re Dellinger* (C.A.7, 1972), 461 F.2d 389, 400.

Nonetheless, we know of no rule of practice within our adversary system which authorizes an attorney to make repeated, *ex parte* telephone calls to the tribunal before which he or she is practicing after being commanded not to do so by the tribunal. To the contrary, DR 7–106 prohibits an attorney from violating a standing rule of a tribunal and DR 7–110 prohibits *ex parte* communications with judges, officials, and employees of a tribunal.

Accordingly, while we would not adopt any rule of law which tends to curtail an attorney's legitimate advocacy, we are compelled to conclude that Wolpert's repeated *ex parte* calls to the private law office of the Acting Judge were outside the range of conduct permitted by our adversarial system.[1] Thus, we hold that the finding of contempt was supported by sufficient evidence.

Finally, we note that although Wolpert's client had limited financial means, and the thirty-day period of Pence's incarceration rendered delays in obtaining

---

1. We do not reach the issue of whether contempt may properly result from a violation of Judge Stralka's additional command that Wolpert cease calling the clerk of courts to determine whether there had been a ruling upon his pending motions.

rulings potentially devastating for his cause, Wolpert could have pursued other avenues of relief for her including remedies available through this court.

*Judgment affirmed.*

O'DONNELL and HOLMES, JJ., concur.

ROBERT E. HOLMES, J., retired, of the Supreme Court of Ohio, sitting by assignment.