OPINION
{¶ 1} Appellant, Raven Bean, appeals from his conviction in the Dayton Municipal Court of two counts of petty theft. Bean raises two assignments of error. In the first, he contends the trial court abused its discretion in denying him a continuance of his scheduled trial date. In the second, he contends he was denied the effective *Page 2 
assistance of counsel.
 {¶ 2} The events leading up to Bean's trial are set out in his brief and are supported by our view of the record. They are as follows:
 {¶ 3} On November 22, 2006, Bean was arraigned on charges of petty theft, R.C. 2913.02, and criminal trespass, R.C. 2911.21 (Case 06CRB18687), for an incident which occurred on November 8 at Meijer. On December 1, 2006, Bean was arraigned for petty theft, R.C. 2913.02 (Case 06CRB19599), for an incident which occurred on November 30 at Kroger. Bean pled not guilty in both instances and the cases were then set for pretrial. Bean appeared on December 5, 2006, and maintained his not guilty plea in case 06CRB18687 (the Meijer theft/criminal trespass case). At that pre-trial he was represented by Charles Cromley of the Montgomery County Public Defender's Office. That case was then set for trial on December 22, 2006. On December 18, 2006, Bean appeared for pretrial in Case 06CRB19599 (the Kroger petty theft case), Charles Cromley represented him, he pled not guilty, and the case was set for trial on December 22, 2006. On December 22, 2006, Bean appeared along with his trial counsel, Charles Cromley. On that trial date, the State's witnesses were present in both cases, and the State was prepared to proceed to trial. Bean, through counsel Charles Cromley, indicated that they were in need of a continuance in order to prepare for trial. They indicated to the court that their investigators were in need of additional time to complete their investigation. The written request for continuance/entry granting that continuance was filed on December 27, 2006, and the cases were thereby both reset to January 11, 2007 for trial.
 {¶ 4} At trial, testimony revealed that on November 30, 2006, off-duty Dayton *Page 3 
Police Officer William McReynolds, along with two other security guards, were standing near the exit of Kroger in lane nine, which was unmanned by a cashier. McReynolds testified that Bean was cutting between the officers in order to leave the store when a steak struck security officer Paxton on the foot. McReynolds said he then took Bean into a security sub-station where he recovered two other steaks stuffed inside his pants. (T. 6,7.) McReynolds said he identified the steaks as coming from Kroger's stock. McReynolds testified that he was one hundred percent sure that Bean was the individual who stole the three packages of steaks from Kroger. (Tr.8.)
 {¶ 5} After Officer McReynolds testified on direct examination, Bean's counsel indicated he was unable to proceed with cross-examination because he had not completed his investigation of the Kroger incident. Later, during final argument, Bean's counsel responded as follows:
 {¶ 6} "Mr. Cromley: Your Honor, as we eluded [sic] to earlier in the Motion For Continuance, we would offer that had we been able to complete the investigation, we would have obtained the following information that night, and I proffer that documentary video and testimonial evidence would have presented that Mr. Bean was improperly stopped and that anydiscovery of any merchandise took place before he was passed [sic]the last point of any payment that he did indicate to the securityofficer that he had some items that he would pay for beforeleaving.
 {¶ 7} "Ms. Musto: Your Honor, I'm gonna object. That fact's not in evidence."
 {¶ 8} The defense presented no evidence, and the court found Bean guilty of petty theft.
 {¶ 9} Furthermore, testimony at trial indicated that on November 8, 2006, Bean *Page 4 
was observed by Stacey Nuthman, loss prevention specialist, in Meijer taking a tan Dickie coat. (Tr. 16.) Nuthman testified that she observed Bean moving quickly through the store, and wondering why he was in such a hurry, she followed him. She then observed him remove his coat, take a tan Dickie coat from the shelf and put it on. Bean then placed his coat on top of the tan Dickie coat. (Tr. 16.) Ms. Nuthman was approximately twenty to twenty-five feet away from Bean when she made these observations. (Tr. 16.) Ms. Nuthman followed the Aapellant past the cash registers where he exited the store without paying for the Dickie jacket. She maintained constant eye contact with Bean as he exited the store. (Tr. 17.) Ms. Nuthman was unable to stop Bean as he exited the store due to lack of proper back up. (Tr. 17.) She contacted the Dayton Police as she witnessed Bean get onto a City of Dayton bus. (Tr. 17.) She continued to observe him through the window of the bus. (Tr. 17.) Bean took off the Dickie jacket and placed it on the seat of the bus and then moved towards the center of the bus away from the jacket. (Tr. 17, 18.) Ms. Nuthman spoke to the bus driver, but did not feel safe boarding the bus at that time. (Tr. 18.) The bus driver pulled off and was soon stopped by Dayton Police Officer Hall. (Tr. 18.) Bean was returned to Meijer along with the Dickie jacket recovered from the bus by Officer Hall. (Tr. 18.) Ms. Nuthman identified him and photographed the stolen jacket and the appellant. (See State's Exhibit 1, 2, and 3.) (Tr. 18.) The State attempted to qualify Ms. Nuthman as the keeper of the records regarding a prior criminal trespass notice that was issued to Bean from Meijer (Tr. 21, 22.) Bean's trial counsel cross-examined Ms. Nuthman extensively about her position as keeper of the records. (Tr. 23, 24, 25, 26, 27.) He also cross-examined her about her identification of Bean and about her identification of *Page 5 
the stolen merchandise. (Tr. 27, 28, 29, 30.) Ms. Nuthman confirmed that she was certain and in fact "very sure" of Bean's identity and that he was the individual who took the Dickie jacket from the Meijer store that day. (Tr. 32.) She observed him from as close as ten to fifteen feet. (Tr. 31, 32.)
 {¶ 10} Bean's trial counsel conducted an extensive cross-examination of both State's witnesses. At the conclusion of the State's case, Mr. Cromley again made a statement for the record which he characterized as a proffer:
 {¶ 11} "Mr. Cromley: And Your Honor what we are proffering in this theft offense was the evidence that we expected to obtain, one not only from either security document and or video evidence, but as well our attempt to contact and obtain evidence from the driver of the bus. Obviously we were not able to obtain that prior to today.
 {¶ 12} "We requested a continuance which was denied. We would expect if that evidence were obtained and presented today, that they would establish that Miss Nuthman is mistaken of the identity of Mr. Bean as the individual who got on the bus with that jacket and that he was mistakenly identified when brought back to her for identification as the only suspect brought back by the police. And that the merchandise, of course we brought out on her cross, that the merchandise was brought back by the police officer and not in the possession of Mr. Bean.
 {¶ 13} "And we believe that that evidence, if submitted, would be sufficient to establish Mr. Bean's innocence or at least a reasonable doubt, reasonable doubt in the case, and that would be our case in chief. And with that proffer we would rest.
 {¶ 14} "The Court: Okay. State wish to be heard on that?
 {¶ 15} "Ms. Musto: No, Your Honor." *Page 6 
 {¶ 16} Bean's counsel was able to successfully object to the admission of State's Exhibit 4 and because Ms. Nuthman could not be established as the keeper of the records, Bean was found not guilty of the criminal trespass charges. (Tr. 33.) However, as we stated above, Bean was found guilty of the petty theft charges and sentenced to 180 days in jail. (Tr. 38, 29.)
 {¶ 17} Whether to grant or refuse a motion for a continuance is addressed to the sound judicial discretion of the court, and the court's ruling will not be disturbed on review unless it is demonstrated that the discretion has been abused. Curtis v. Chiaramonte (1978),53 Ohio St.2d 15, 7 O.O.3d 61, 371 N.E.2d 839. An abuse of discretion connotes more than a mere error in judgment; it signifies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 5 OBR 481,450 N.E.2d 1140. Whether a trial court abuses its discretion by denying a request for a continuance depends on the circumstances in the case, particularly in the reasons presented to the trial judge at the time the request is denied. State v. Unger (1981), 67 Ohio St.2d 65, 67,21 O.O.3d 41, 423 N.E.2d 1078.
 {¶ 18} Bean contends the trial court abused its discretion in refusing to grant his continuance because his lawyer had not completed his investigation in preparation for the two trials. In particular, Bean notes that he wanted to view the video surveillance tapes from the two stores and interview the driver of the RTA bus to find out what happened on the bus. Bean also contends the trial court abused its discretion in not granting him the continuance because the facts in his case were indistinguishable from In re Sherlock (1987), 37 Ohio App.3d 204,525 N.E.2d 512. In that case we held that *Page 7 
where a trial court denies a continuance in a criminal trial and, as a consequence, defense counsel refuses to participate in the trial for fear that the defendant would receive ineffective assistance of counsel, the court may commit error under these circumstances in finding defense counsel in contempt and imposing a fine. Id. at 213. Bean argues that if anyone should have been punished for counsel's lack of preparation, it should have been trial counsel and not him. Bean notes that trial counsel conducted no cross-examination in the first trial and minimal cross-examination in the second.
 {¶ 19} The State argues that the trial court did not abuse its discretion because both continuance requests were made on the day of trial and one continuance was actually granted, giving Bean an additional twenty (20) days to prepare for the trials. The State notes that its witnesses were both present on the scheduled trial dates. The State argues that Bean did not indicate how much time he needed for further investigation or that there was any other evidence in existence which might be favorable to him. The State argues that In reSherlock is distinguishable because that case was an appeal of a contempt finding because counsel refused to speak after counsel had been assured on a prior occasion that the case would not proceed until a related felony was disposed of in the common pleas court. Lastly, the State argues that Bean failed to proffer the existence of any exculpatory evidence that could be discovered in the event the continuance was granted. The State notes that even if the video surveillance camera showed that Bean had not passed the last point of sale when he was apprehended, he had already completed his crime when he shoved the steaks into his pants. *Page 8 
 {¶ 20} This Court in State v. Williams (1984), 16 Ohio App.3d 232,16 OBR 248, 475 N.E.2d 168, held that it was well settled that in a prosecution for theft under R.C. 2913.02, the least removing of an item with an intent to deprive the owner of it is a sufficient asportation, though the property is not removed from the premises of the owner nor returned in the possession of the defendant. Id. at 234. In that case, the accused placed the store's blouses inside her coat and walked to the men's department of the store. We noted that settled law comports with common sense, for to wait until the suspect leaves the store with the stolen merchandise may jeopardize the successful apprehension of the suspect. We agree with the State that even if a surveillance video would show that Bean had not passed the registers (the point of sale) when the steak fell from his pants, it would have made no difference to the outcome of the first trial. See Id. We also agree that theSherlock case is distinguishable from the facts in this case. InSherlock, we reversed a trial court's contempt citation of defense counsel when she refused to proceed on ethical grounds that she was unprepared to defend the defendant. We never addressed the issue of whether a continuance should have been granted.
 {¶ 21} As to the Meijer theft, defense counsel contended that he was unable to contact the bus driver or to view a surveillance video if one existed. Defense counsel did not suggest the bus driver would present exculpatory evidence on Bean's behalf. In conclusion, we cannot say that the trial court abused its discretion in denying Bean's second request for a continuance. The first assignment of error is Overruled.
 {¶ 22} In his second assignment, Bean contends that he was denied the effective assistance of counsel. He notes that his counsel failed to cross-examine Officer *Page 9 
McReynolds, he offered no evidence on Bean's behalf, and he made no closing statement. In the second trial, Bean contends his trial counsel failed to object to an improper out of court identification, failed to call witnesses, failed to examine any surveillance video, and failed to talk to the bus driver.
 {¶ 23} The State argues trial counsel's decision not to question Officer McReynolds and not to present witnesses in his own behalf did not constitute ineffective assistance of counsel. We agree with the State's argument in that respect. Bean contends he was not guilty of theft because he had not passed the point of sale (the registers) when he dropped the steak. That was not contested. There was no suggestion in this record that there was any witness who could testify on behalf of Bean. There was no evidence anyone witnessed the Kroger theft other than the officers and Bean himself. In the Meijer matter, there is no evidence in the record that the bus driver would have provided favorable evidence for Bean. Trial counsel extensively cross-examined Stacey Nuthman about the certainty of her identification of Bean as the thief. He successfully demonstrated that Ms. Nuthman was not the keeper of the store's records and prevented Bean's conviction on the trespass charge. There is no evidence that counsel could have suppressed the identification of Bean by Nuthman as she had a full opportunity to observe Bean at close quarters in the store before he fled and she was "very sure" of his identify as the individual who stole the "Dickie" jacket. Lastly, there was no evidence the bus driver would have been a useful witness for Bean.
 {¶ 24} In Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674, the Court interpreted the meaning of the accused's right to counsel and the standard by which ineffective assistance of counsel should be determined. The *Page 10 
two-part test requires that a convicted defendant alleging ineffective assistance of counsel must show not only that counsel was not functioning as the counsel guaranteed by the Sixth Amendment so as to provide reasonably effective assistance but also that counsel's errors were so serious as to deprive the defendant of a fair trial because of a reasonable probability that, but for counsel's unprofessional errors, the results would have been different. Id. at 687. Strickland goes on to say that "[j] udicial scrutiny of counsel's performance must be highly deferential. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. at 689 (citations omitted). Additionally Strickland requires that "[a] convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in *Page 11 
the exercise of reasonable professional judgment." Id. at 690.
 {¶ 25} Bean has failed to demonstrate that his trial counsel was constitutionally ineffective. The second assignment is Overruled. The judgment of the trial court is Affirmed.
 GRADY and DONOVAN, JJ., concur. *Page 1