[Cite as *State v. Csillag*, 2013-Ohio-4608.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 13AP-192 |
| | | (M.C. No. 2012 CRB 29449) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Elizabeth Csillag, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on October 17, 2013

*Richard C. Pfeiffer, Jr.*, City Attorney, *Lara N. Baker*, City Prosecutor, and *Melanie R. Tobias*, for appellee.

*Heather L. Keck*, for appellant.

APPEAL from the Franklin County Municipal Court.

BROWN, J.

{¶ 1} This is an appeal by defendant-appellant, Elizabeth Csillag, from a judgment of conviction and sentence entered by the Franklin County Municipal Court following a bench trial in which the court found appellant guilty of petty theft.

{¶ 2} On November 25, 2012, appellant was charged with one count of theft, in violation of R.C. 2913.02(A)(1), arising out of an incident at a Kroger grocery store located on Graceland Boulevard, Columbus. Appellant waived a jury trial, and the matter was tried before the court on February 4, 2013.

{¶ 3} On October 27, 2012, Michael Simons, a senior loss prevention specialist with Kroger, was in his office when he received a call from a "front-end" associate alerting him about a female shopper. (Tr. 12.) Simons observed the woman on the store's security

cameras. At trial, Simons identified appellant as the individual he viewed in the store on that date. During Simons' testimony, the state introduced into evidence video taken from the store's security system, identified as state's exhibit No. 1.

{¶ 4} Simons observed appellant pushing a shopping cart, containing various store items, near the register area. Appellant "didn't go through a register. She just kind of kept walking around the front end. She would walk over near the door and then just kind of look around. If there were employees that were working in the area, she'd walk away from the door." (Tr. 16.) At one point, appellant "actually left her cart and walked out of the store," leaving her purse and items in the cart. (Tr. 16.) Appellant returned and "looked around and came back in and got her cart." (Tr. 16.)

{¶ 5} Appellant then pushed the cart out into the vestibule area, past the point of sale, without paying for any of the items. Simons went to the front of the store to stop her but he noticed she was talking to a Kroger sales associate in that area. Simons then grabbed an empty cart and began "putting some stuff in the cart to make it look like [he] was a customer, so she wouldn't get spooked and ditch the cart." (Tr. 20.) After the sales associate came back inside, appellant "turned and started to go towards the door to go out." (Tr. 20.) At that point, Simons went over to appellant and displayed his badge and informed her that he was a Kroger loss prevention specialist. Simons asked appellant to come back inside. Appellant told Simons that "she wasn't doing anything, and that she was going to go through the door and pay for the stuff, and she hadn't done anything wrong." (Tr. 20.)

{¶ 6} Appellant accompanied Simons to the store's security office, where Simons prepared a form regarding the incident. Appellant told Simons that she intended to pay for the items, but explained that "[s]he's kind of skittish when she shops. She gets kind of all over the place. That is what she was telling me; that she was going to pay for everything; and that she just kind of wandered around like that." (Tr. 22.) Appellant also indicated that her mother was with her, and that she was "still going to be in the store waiting for her mom. And this was all just a big misunderstanding. I shouldn't have stopped her." (Tr. 22-23.)

{¶ 7} Simons took an inventory of the shopping cart, which contained 21 items with a value of $127.13. After Simons filled out the form, he showed it to appellant "and

asked her if everything on there was correct. And she dated and signed it and initialed it." (Tr. 23.) The statement on the form provides in part: "While in the store I willfully concealed * * * items of merchandise known by me to be the property of the store * * * in the total amount of $127.13 and did take and remove the same with no intention of making payment for same." (State's exhibit No. 3.) Simons stated that appellant signed the statement of her own accord. After signing the document, appellant left the store and proceeded to her car and drove away. Simons did not observe anyone else in appellant's vehicle at the time.

{¶ 8} Appellant, who testified on her own behalf, stated that she formerly held a teaching position but that she no longer taught because of health reasons and incarceration. Appellant acknowledged a past problem with alcohol and that she had been previously charged with trespassing and resisting arrest. She also acknowledged a prior conviction in 2009 involving a theft charge that was reduced to unauthorized use of property.

{¶ 9} Appellant testified that she went to the Kroger store on October 27, 2012 to purchase some items for herself and her mother. Appellant stated that her mother accompanied her to the store, but that they became separated "a couple of different times." (Tr. 51.) Appellant attempted to call her mother on a cell phone, but received no answer. Appellant explained that she was walking across the front of the store "scanning all the aisles for my mom." (Tr. 53.) Appellant acknowledged that she "left the store" at one point, and that she walked past the area "where the sensors are," but explained: "you can buy things out there." (Tr. 55.) Appellant testified that she did not intend to steal the items, and she believed that by signing the statement "it could be solved out of court." (Tr. 67.)

{¶ 10} Following the presentation of evidence, the trial court pronounced a finding of guilt from the bench and indicated it would sentence appellant to 60 days in jail, with all days suspended subject to one year of probation. The trial court filed a judgment entry reflecting the sentence announced at trial.

{¶ 11} On appeal, appellant sets forth the following two assignments of error for this court's review:

I. THE VERDICT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE WHERE THERE WAS NO EVIDENCE PRESENTED THAT APPELLANT INTENDED TO DEPRIVE THE OWNER OF GOODS OR SERVICES WITHOUT CONSENT.

II. THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHERE THERE WAS NO EVIDENCE PRESENTED THAT APPELLANT INTENDED TO DEPRIVE THE OWNER OF GOODS OR SERVICES WITHOUT CONSENT.

{¶ 12} Appellant's assignments of error are interrelated and will be considered together. Under these assignments of error, appellant challenges her conviction on the grounds of sufficiency and manifest weight of the evidence.

{¶ 13} We initially note the different standards of review employed for sufficiency and manifest weight of the evidence. In *State v. Sexton,* 10th Dist. No. 01AP-398, 2002-Ohi0-3617, ¶ 30-31, this court discussed the distinction between those standards as follows:

> To reverse a conviction because of insufficient evidence, we must determine as a matter of law, after viewing the evidence in a light most favorable to the prosecution, that a rational trier of fact could not have found the essential elements of the crime proved beyond a reasonable doubt. * * * Sufficiency is a test of adequacy, a question of law. * * * We will not disturb a jury's verdict unless we find that reasonable minds could not reach the conclusion the jury reached as the trier or fact. * * * We will neither resolve evidentiary conflicts in the defendant's favor nor substitute our assessment of the credibility of the witnesses for the assessment made by the jury. * * * A conviction based upon legally insufficient evidence amounts to a denial of due process, * * * and if we sustain appellant's insufficient evidence claim, the state will be barred from retrying appellant.
>
> A manifest weight argument, by contrast, requires us to engage in a limited weighing of the evidence to determine whether there is enough competent, credible evidence so as to permit reasonable minds to find guilt beyond a reasonable doubt * * * to support the judgment of conviction. * * * Issues of witness credibility and concerning the weight to attach to specific testimony remain primarily within the province of the

> trier of fact, whose opportunity to make those determinations is superior to that of a reviewing court. * * * Nonetheless, we must review the entire record. With caution and deference to the role of the trier of fact, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury, as the trier of facts, clearly lost its way, thereby creating such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against a conviction.

{¶ 14} We first consider appellant's claim that her conviction for petty theft was not supported by sufficient evidence. R.C. 2913.02(A)(1) states in part: "No person, with purpose to deprive the owner of property * * * shall knowingly obtain or exert control over * * * the property * * * [w]ithout the consent of the owner or person authorized to give consent."

{¶ 15} In considering the evidence presented by the state with respect to the elements of the offense, the record indicates that a Kroger loss prevention specialist, Simons, was alerted by another employee regarding a suspicious individual with a shopping cart. Simons observed this individual, identified at trial as appellant, on the store's security cameras walking around the front area of the store; appellant was looking around and if Kroger employees were in the area she walked away from the door. At one point, appellant left her cart and walked out of the store; upon returning, she looked around and was "going back and forth between the two sets of exit doors at the front end" of the store. (Tr. 16.)

{¶ 16} As appellant pushed the cart into the vestibule area, past the point of sale, Simons left the security office and walked to the vestibule area. Upon observing appellant talking with another Kroger employee, Simons took a shopping cart and pretended to be a customer. After the other Kroger employee left the vestibule area, Simons observed appellant turn and begin to push the cart toward the exit doors without having paid for any of the items. At that time, Simons approached appellant and identified himself as a Kroger loss prevention officer. Appellant accompanied Simons to the security office,

where Simons totaled the items in the cart. Appellant signed a form stating that she had taken items, valued at $127.13, with no intention of making payment.

{¶ 17} Appellant contends there was insufficient evidence to prove that her actions were outside the scope of consent granted by Kroger. Appellant cites evidence indicating there were items for sale in the vestibule area of the store, past the point of sale, and she maintains there was no evidence Kroger had a policy of precluding customers from being in the vestibule with items in their cart.

{¶ 18} This court, in analyzing the elements of Ohio's theft statute, has previously held it is "sufficient for the prosecution to demonstrate circumstances from which it could be inferred, beyond a reasonable doubt, that the accused had obtained control of the property without the consent of the owner or anyone authorized to give consent." *State v. Jeantine,* 10th Dist. No. 09AP-296, 2009-Ohio-6775, ¶ 28. Under Ohio law, "the least removing of an item with intent to deprive the owner constitutes a sufficient asportation to establish a theft offense, even when the property is not removed from the premises of the owner or retained in the possession of defendant." *State v. Allen,* 8th Dist. No. 62275 (Sept. 9, 1993), citing *State v. Davis,* 56 Ohio St.2d 51 (1978); *Eckels v. State,* 20 Ohio St. 508 (1870). Accordingly, property need not be removed from the premises of the owner in order to constitute theft. *State v. Randazzo,* 8th Dist. No. 79667, 2002-Ohio-2250, ¶ 51. *See also State v. Bean,* 2d Dist. No. 22035, 2007-Ohio-6132, ¶ 20, citing *State v. Williams,* 16 Ohio App.3d 232, 234 (2d Dist.1984) ("to wait until the suspect leaves the store with the stolen merchandise may indeed jeopardize the successful apprehension of the suspect"); *State v. Peak,* 11th Dist. No. 2004-L-124, 2005-Ohio-6422, ¶ 34 ("The law does not require the store to wait until a defendant leaves the premises with merchandise to apprehend a suspect for shoplifting.").

{¶ 19} In the instant case, the state presented evidence that appellant not only pushed the cart past the last point of sale without paying, but that she began exiting the store. Specifically, Simons testified that, "[a]fter the associate came back inside, she turned and started to go towards the door to go out." (Tr. 20.) The trial court determined that the evidence showed a lack of intent on the part of appellant "to turn the cart around and move back into the store." (Tr. 87.) The state also introduced into evidence the

document signed by appellant acknowledging that she took the items with no intent of making payment.

{¶ 20} Viewing the record in a light most favorable to the prosecution, there was sufficient evidence by which the trier of fact could have inferred that appellant, with purpose to deprive Kroger of possession and control of property, knowingly exerted possession and control over the property without the owner's consent. Accordingly, appellant's challenge as to the sufficiency of the evidence is not well-taken.

{¶ 21} In her manifest weight challenge, appellant points to a lack of evidence that she attempted to conceal any of the items in the cart or that she attempted to flee the store. Appellant points to her testimony that she was looking for her mother and that she walked into the vestibule area because she thought she saw her mother in that area.

{¶ 22} In contrast to the analysis with respect to sufficiency and burden of production, "a determination of whether a conviction is against the manifest weight of the evidence does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion." *Cuyahoga Falls v. Campanalie*, 9th Dist. No. 26383, 2013-Ohio-3509, ¶ 15, citing *State v. Love,* 9th Dist. No. 21654, 2004-Ohio-1422, ¶ 11. This court's discretionary power to reverse a conviction as against the manifest weight of the evidence "should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction." *Id.* at ¶ 16, citing *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997).

{¶ 23} As noted, appellant points to her testimony explaining her actions in the store, including her statements that she was looking for her mother. The trial court, however, also heard testimony by Simons that appellant, after leaving the store, went to her car and drove away with nobody else in the vehicle, and it is apparent the court found less than credible appellant's testimony regarding her mother. According to appellant, after leaving Kroger, she went to a nearby Target store, and her brother eventually "collected" her mother somewhere in the area. (Tr. 72.) When asked when her brother arrived, appellant had "no idea." (Tr. 73.) In considering the testimony presented, the trial court indicated on the record that it found a lack of concern on the part of appellant "at the time" regarding her "mother's whereabouts." (Tr. 87.)

{¶ 24} Here, the trial court listened to the contrasting testimony of Simons and appellant. Further, the testimony of Simons regarding appellant's behavior inside the store was reinforced by the video recording from Kroger's surveillance cameras. The trier of fact, in reviewing all the testimony and evidence, including the video, determined that appellant was guilty of the offense. The determination with respect to "weight and credibility of the evidence is for the trier of fact," who "is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible." *State v. Johnson,* 10th Dist. No. 11AP-717, 2012-Ohio-2325, ¶ 32, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967); *State v. Williams,* 10th Dist. No. 02AP-35, 2002-Ohio-4503, ¶ 58. Upon review of the record, we do not find that the trial court clearly lost its way and created a manifest miscarriage of justice in finding appellant guilty of the offense.

{¶ 25} Based upon the foregoing, appellant's two assignments of error are without merit and are overruled, and the judgment of the Franklin County Municipal Court is hereby affirmed.

*Judgment affirmed.*

SADLER and T. BRYANT, JJ., concur.

T. BRYANT, J., retired of the Third Appellate District, assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).

_____