IN RE GRAND JURY SUBPOENA ISSUED TO ROBERT W. BURNS ON JUNE 23, 1988.

(No. M-88-00220—Decided
July 19, 1988.)

Court of Common Pleas of
Hamilton County.

*William E. Breyer,* assistant prosecuting attorney, for the state.

*Robert R. Hastings, Jr.* and *Paul E. Balash,* for Robert W. Burns.

THOMAS H. CRUSH, J. R.C. 2939.14 provides in pertinent part as follows:

"If a witness before a grand jury refuses to answer an interrogatory, the court of common pleas * * * shall determine whether the witness is required to answer * * *."

The grand jury witness in this matter is Robert W. Burns, an attorney at law licensed to practice in the state of Ohio. Burns appeared before the Hamilton County Grand Jury, was asked the following questions, and gave the following answers:

"On May 26, 1988, did you make a telephone call to the Springdale Police Department?

"Yes.

"What did you ask?

"I was inquiring whether or not an incident was reported on or about May 25, 1988, in the early morning hours involving a woman.

"What is the name of the person on whose behalf you made that telephone call?

"I must refuse to answer the question because I was acting on behalf of a client * * * and my client * * * is asserting the attorney-client privilege. * * *"

Underlying all of this were two events that occurred in or near Springdale, Ohio, on May 25, 1988. At 2:05 a.m. on that date a male subject exposed himself to a female after the male attempted unsuccessfully to force his way into the female's car. At 2:30 a.m., the same day, apparently the same male got into another female's car upon the pretext of being injured and needing to go to a hospital. The male began to choke the female and had sexual contact with her. The female managed to escape.

The attorney-client privilege is stated as follows in R.C. 2317.02:

"The following persons shall not testify in certain respects:

"(A) An attorney, concerning a communication made to him by his client in that relation or his advice to his client * * *[.]"

In an affidavit filed herein, Robert W. Burns stated as follows:

"1. I am a duly licensed attorney at law in the state of Ohio.

"2. On or about May 26, 1988, I was retained by an individual for legal representation.

"3. The subject of the legal representation in question directly related to the inquiry I made to the Springdale Police Department concerning an incident that occurred during the early morning hours of May 25, 1988.

"4. If I am ordered to disclose the identity of my client such disclosure would result in the prosecution of my client."

There is, therefore, no question that an attorney-client relationship exists between Burns and the individual whose name he refuses to give to the grand jury.

The issue in this matter is whether the attorney-client privilege extends to the client's name. This issue is addressed in the following cases:

"In most instances, the client's name or identity 'is not one of the facts about which the client seeks legal

assistance; the legal advice will in no way depend on whether the client's name is Jones or Smith.' Saltzburg, Communication Falling Within the Attorney-Client Privilege (1981), 66 Iowa L. Rev. 811, 821. If a case falls plainly within the reason and spirit of R.C. 2317.02(A), its principles shall apply even though a client's name and address may not, in most circumstances, be within the strictures of R.C. 2317.02(A). *Waldmann,* * * * [*infra,*] at 177.

"*Waldmann* was a domestic relations case where the confidentiality of the client's address was necessary to protect the client's safety. See *Brennan* v. *Brennan* (1980), 281 Pa. Super. 362, 422 A. 2d 510. Our use of limiting language regarding the applicability of the attorney-client privilege to a client's name and address in *Waldmann* implicitly, if not explicitly, illustrates our belief that '[i]n the determination [of] whether a communication by a client to an attorney should be afforded the cloak of privilege, " 'much ought to depend on the circumstances of each case.' " [Citations omitted.]' *In re Jacqueline F.* (1979), 47 N.Y. 2d 215, 222, 417 N.Y. Supp. 2d 884, 888, 391 N.E. 2d 967, 971. It has been held that the attorney-client privilege only exists to aid in the administration of justice. *Brennan, supra,* at 372. Necessarily, then, it may not be said that our holding in *Waldmann* affords the cloak of privilege to a client's name and address in all cases under all circumstances. * * *

" '* * *

" '* * * The disclosure of the client's identity is required where, as at bar, injury would result to the proper administration of justice "immeasurably greater than the benefit that would enure to the relation of attorney and client." * * * The seal of secrecy between attorney and client is to be preserved "in the aid of a public

purpose to expose wrongdoing and not * * * to conceal wrongdoing." * * * "[T]he veil [of privilege is removed] from the client's name when the attorney's assertion of a privilege is a cover for cooperation in wrongdoing." [Citations omitted.]'

"We, therefore, conclude that when the peculiar factual environment and the egregious circumstances of the instant case are properly considered in light of our holding regarding the attorney-client privilege in *Waldmann, supra,* the names and addresses of appellants' alleged clients are not entitled to the cloak of protection afforded by the attorney-client privilege." (Footnotes omitted.) *Lemley* v. *Kaiser* (1983), 6 Ohio St. 3d 258, 264-266, 6 OBR 324, 330-332, 452 N.E. 2d 1304, 1310-1312.

"On October 24, 1975, a praecipe had been filed to subpoena appellant's appearance as a witness at a hearing on November 4, 1975. At that hearing, appellant, appearing under subpoena as a witness, refused to reveal the address of his client, Edna M. Waldmann. As a result, he was adjudged to be in contempt of court and was sentenced to pay a fine of $500 and serve ten days in jail. * * *

"'* * *

"The confidentiality of a client's address in a domestic relations matter, especially a divorce action, can be a vital feature of the action; it is not uncommon for a spouse who fears for her or his safety to need assurance that their [*sic*] whereabouts will not be disclosed. If a client feels that confidentially divulged matters will not be protected, facts may be withheld which are necessary to competent representation. When the attorney-client privilege exists, the privilege has been held to encompass the protection of the address of the client. *In re Heile* (1939), 65 Ohio App. 45, 49, 29 N.E. 2d 175. (Footnotes omitted.)

"* * *

"* * * [T]he finding of appellant to be in contempt * * * was error * * *." *Waldmann* v. *Waldmann* (1976), 48 Ohio St. 2d 176, 176-179, 2 O.O. 3d 373, 374-375, 358 N.E. 2d 521, 522-523.

"* * * In 28 Ruling Case Law, 571, Section 161, it is stated:

" 'Communications between an attorney and the agent of his client are also entitled to the same protection from disclosure as those passing directly between the attorney and his client. The agent as well as the attorney is prohibited from testifying with respect thereto except by consent of the client, and this is true even though the communications are made merely with a view to establishing the relation of attorney and client, and securing professional aid for the principal.'

"And where the privilege exists, it includes the protection of the name and address of the client. *Neugass* v. *Terminal Cab Corp.,* 139 N.Y. Misc., 699, 249 N.Y. Supp., 631." *In re Heile* (1939), 65 Ohio App. 45, 49, 31 Ohio Law Abs. 341, 344, 18 O.O. 274, 276, 29 N.E. 2d 175, 177.

"* * * [T]he doctrine of privileged communications between client and attorney * * * was first recognized in England during the reign of Elizabeth. The first theory granted the privilege to the attorney upon the basis of *the oath and the honor* of the attorney, but did not extend the privilege to the client; that theory was finally repudiated by the courts of England and a second theory developed granting the privilege to the client in order to free him from apprehension in consulting his legal adviser; under this theory the attorney was refused permission to testify. [Emphasis *sic.*]

"It is now a recognized common-law rule that confidential communications between a client and an attorney are privileged and protected from inquiry when the client is a witness as well as when the attorney is a witness * * *.

"In this jurisdiction this right is preserved by Section 11494, General Code, which provides in part as follows:

" 'The following persons shall not testify in certain respects:

" '1. An attorney, concerning a communication made to him by his client in that relation, or his advice to his client * * *.'

"* * *

"The rule with regard to privileged communications between client and attorney is well understood; difficulty is often encountered in its application.

"* * *

"In *Collins* v. *Hoffman,* 62 Wash., 278, 113 P., 625, the Supreme Court of Washington held (paragraph four of the syllabus):

" 'An attorney is not privileged from disclosing by whom he was employed nor the terms of the employment.'

"See, also, *Satterlee, Admr.,* v. *Bliss,* 36 Cal., 489; *Chirac* v. *Reinicker,* 11 U.S. (24 Wheat.), 280; *Strickland* v. *Capital City Mills,* 74 S.C., 16, 54 S.E., 220; *O'Brien* v. *Spaulding,* 102 Ga., 490, 31 S.E., 100, 66 Am. St. Rep., 202; Weeks on Attorneys at Law, 320, Section 151; 70 Corpus Juris, 420, Section 562." *In re Martin* (1943), 141 Ohio St. 87, 101-103, 25 O.O. 225, 231-232, 47 N.E. 2d 388, 394-395.

The authority above cited, in its present state in Ohio, can be summarized as follows:

The confidentiality of a client's name or identity is dependent upon several factors: (1) In most instances, the client's name or identity is not one of the facts about which the client seeks advice; therefore, it is, in most instances, not confidential; (2) If the

client's name or identity is a matter about which the client seeks advice then the client's name and identity are confidential; and (3) The privilege is lost if it is used as a cover for the attorney's cooperation in his client's wrongdoing.

Based on these criteria, it is clear that the name and identity of Burns' client are confidences which the attorney may not be compelled to reveal. The inference is obvious that Burns' client was the perpetrator of the sex-related crimes in Springdale, and that one of the matters about which the client conferred with Burns was whether to reveal his identity. It can hardly be argued that a client who consults an attorney about whether a criminal act has been reported, and whether the client's connection with the criminal act has been discovered, is not consulting with the attorney regarding his name and identity.

By refusing to reveal his client's name and identity in this situation, the attorney is not cooperating in a crime because the crime or crimes were completed before the client consulted the attorney. It cannot be said that, in this situation, the revealing of the client's name would benefit the proper administration of justice to an "immeasurably greater" extent than protecting the relation of attorney and client. Positing that there is such a thing as lawyer-client confidentiality, the basic premise thereof must be that the lawyer cannot, willy-nilly, be required to reveal those confidences which are harmful to his client. In this case, revealing the name of his client is the most harmful thing the attorney could do.

Additionally, consideration must be given to the Code of Professional Responsibility:

"EC 4-1 Both the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidences and secrets of one who has employed or sought to employ him. A client must feel free to discuss whatever he wishes with his lawyer * * *. A lawyer should be fully informed of all the facts of the matter he is handling in order for his client to obtain the full advantage of our legal system. It is for the lawyer in the exercise of his independent professional judgment to separate the relevant and important from the irrelevant and unimportant. * * *

"EC 4-2 The obligation to protect confidences and secrets obviously does not preclude a lawyer from revealing information when his client consents after full disclosure, when necessary to perform his professional employment, when permitted by a Disciplinary Rule, or when required by law. * * * A lawyer must always be sensitive to the rights and wishes of his client and act scrupulously in the making of decisions which may involve the disclosure of information obtained in his professional relationship. * * *
"* * *

"EC 4-4 The attorney-client privilege is more limited than the ethical obligation of a lawyer to guard the confidences and secrets of his client. This ethical precept, unlike the evidentiary privilege, exists without regard to the nature or source of information or the fact that others share the knowledge. * * *

"EC 4-5 A lawyer should not use information acquired in the course of the representation of a client to the disadvantage of the client * * *."
"* * *

"DR 4-101 * * *
"* * *

"(B) Except when permitted under DR 4-101(C), a lawyer shall not knowingly:

"(1) Reveal a confidence or secret of his client.

"(2) Use a confidence or secret of his client to the disadvantage of the client.

"(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.

"(C) A lawyer may reveal:

"(1) Confidences or secrets with the consent of the client or clients affected, but only after a full disclosure to them.

"(2) Confidences or secrets when permitted under Disciplinary Rules or required by law or court order.

"(3) The intention of his client to commit a crime and the information necessary to prevent the crime."

"PREFACE

"* * *

"The Ethical Considerations are aspirational in character and represent the objectives toward which every member of the profession should strive. They constitute a body of principles upon which the lawyer can rely for guidance in many specific situations.

"The Disciplinary Rules, unlike the Ethical Considerations, are mandatory in character. The Disciplinary Rules state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action."

The above-quoted ethical rules require an attorney "scrupulously" to respect his client's confidences; not to reveal confidential matters without the consent of the client; and not to use confidential information to the disadvantage of his client. Of course, the attorney may reveal his client's intention to commit a crime.

The prosecutor herein argues that "while the Canons of Ethics and the Disciplinary Rules speak to an attorney's duty in this regard, they do not have the force of law, and have no application here." No authority whatsoever is cited to support this statement. To the contrary, the Code of Professional Responsibility, adopted by the Supreme Court of Ohio, recites that the Ethical Considerations are objectives toward which every member of the Bar should strive, and that the Disciplinary Rules are mandatory. Additionally, the court notes the following:

"* * * A trial court has the 'inherent power to regulate the practice before it and protect the integrity of its proceedings * * *' including the ' "authority and duty to see to the ethical conduct of attorneys * * *." ' * * * [W]e hasten to approve and encourage courts throughout this state in their efforts to halt unprofessional conduct * * *." *Mentor Lagoons, Inc.* v. *Rubin* (1987), 31 Ohio St. 3d 256, 259-260, 31 OBR 459, 462, 510 N.E. 2d 379, 382.

"Defense counsel should not be required to violate his duty to his client as the price of avoiding punishment for contempt." *In re Sherlock* (1987), 37 Ohio App. 3d 204, 525 N.E. 2d 512, paragraph three of the syllabus.

"* * * [W]e have elected to base this decision on the * * * violation by the trial court * * * of appellants' duties under the Code of Professional Responsibility * * *." *State* v. *Gasen* (1976), 48 Ohio App. 2d 191, 195, 2 O.O. 3d 156, 158, 356 N.E. 2d 505, 508, fn.

In other cases, Ohio courts have used provisions of the Code of Professional Responsibility as a basis for decision-making, *e.g., Drake* v. *Caterpillar Tractor Co.* (1984), 15 Ohio St. 3d 346, 348, 15 OBR 468, 470, 474 N.E. 2d 291, 293-294; *WFI, Inc.* v. *Hebert's Business Furniture Co.* (M.C. 1982), 4 OBR 567.

Furthermore, EC 4-4 states that the ethical precept regarding lawyer-client confidentiality is broader than the evidentiary privilege.

It is thus apparent that a trial court must take care that the Ethical Considerations are enforced in matters before it. And it is further apparent that the Ethical Considerations require that, in this case, the lawyer maintain the confidences of his client.

One of the major reasons for the confidentiality ethic is stated in EC 4-1, to wit, that it "encourages laymen to seek early legal assistance."

Realistically, the public as well as the client are served in a matter such as this by the alleged law violator's seeking the advice of an attorney. The attorney will, under the ethical rules, be permitted to reveal the fact should his client express the intention to commit the crime again. If the client needs medical or psychological counseling, the attorney may recognize the need and recommend such help. Although these are only possibilities, the situation is clearly more beneficial to the public than that in which the alleged criminal chooses not to seek guidance and conceals himself for fear of being turned over to the police by an attorney.

For all of the foregoing reasons, the court determines that the witness, Robert W. Burns, shall not be required to answer the interrogatory of the grand jury.

*Judgment accordingly.*