EILEEN A. GALLAGHER, A.J.:
*1022 {¶ 1} Defendants-appellants Robert J. Fedor, Robert J. Fedor, Esq., L.L.C. and Michael T. Arnold (collectively, "appellants") appeal the trial court's order granting plaintiffs-appellees Sean and Allison Pales' (collectively, "appellees" or the "Paleses") motion to compel discovery and denying appellants' motion for a protective order. Appellants assert that the information and documents to be produced under the trial court's order-answers to interrogatories seeking the identities of certain of appellants' nonparty clients and bank statements from appellants' interest on lawyers trust account ("IOLTA") containing information regarding financial transactions involving certain of their nonparty clients-is protected from discovery by the attorney-client privilege. Finding some merit to the appeal, we affirm the trial court's decision in part, reverse it in part and remand the matter for further proceedings.
Factual and Procedural Background
{¶ 2} Attorneys Fedor and Arnold are tax attorneys who practice with the law firm Robert J. Fedor, Esq., L.L.C. (the "Fedor firm"). The Paleses retained appellants to represent them with respect to various tax matters before the Internal Revenue Service ("IRS") and other tax authorities. Appellants represented the Paleses through at least September 30, 2015.
The Paleses' Claims Against Appellants
{¶ 3} On September 1, 2016, appellees filed a complaint against appellants and John and Jane Does 1-10 ("individuals that were employed by the Firm that promoted, participated, and/or ratified the conspiracy and other conduct"), asserting claims of legal malpractice, breach of fiduciary duty, fraud, civil conspiracy, spoliation of evidence and violation of the Ohio Corrupt Practices Act. The Paleses alleged that appellants negligently or intentionally failed to adequately represent them by, among other things, failing to timely file the Paleses' tax returns, failing to advise the Paleses to make estimated quarterly tax payments, filing the Paleses' tax returns without "proper support," failing to claim a research and development credit on the Paleses' tax returns, failing to properly respond to IRS audit requests and mishandling the Paleses' appeal in the United States Tax Court. The Paleses further alleged that appellants intentionally billed them "amounts excessive to amount of time and rate," that these bills were submitted electronically and by U.S. mail (constituting telecommunications fraud and mail fraud) and that appellants had collected payment from the Paleses for this "fraudulently billed time." The Paleses also alleged that appellants had "engaged in similar corrupt acts with other clients" "[a]s will be further proven through discovery." The Paleses sought to recover compensatory damages, treble damages, punitive damages, their attorney fees and costs.
{¶ 4} On November 9, 2016, appellants filed a "partial answer" with respect to the Paleses' legal malpractice claim and a motion to dismiss appellees' claims of breach of fiduciary duty, fraud, civil conspiracy, spoliation of evidence and violation of the Ohio Corrupt Practices Act, arguing that these claims were subsumed into the legal malpractice claim and that fraud was not pled with particularity.
{¶ 5} The Paleses opposed the motion to dismiss. The trial court summarily denied appellants' motion to dismiss, and appellants filed an "amended/complete" answer *1023 to the Paleses' complaint, denying the material allegations of the complaint and asserting various affirmative defenses.
The Discovery Dispute
{¶ 6} The Paleses propounded an initial set of interrogatories and request for the production of documents with their complaint. In November 2016, appellants served their responses and objections to the Paleses' discovery requests.[1] The parties filed a joint motion for a stipulated protective order, setting forth procedures for protecting the "confidential and sensitive business and personal information" the parties anticipated would be disclosed during discovery. The trial court granted the motion.[2]
{¶ 7} Pursuant to the joint stipulated protective order, appellants produced redacted copies of bank statements from their IOLTA account from June 30, 2010 to August 31, 2015, and copies of checks and an account transaction listing relating to the Paleses. However, appellants refused to provide other requested documents and information, including the identities of their current and former nonparty clients and unredacted IOLTA records relating to financial transactions involving their current and former nonparty clients. On March 22, 2017, after informal efforts to resolve the discovery dispute failed, the Paleses filed a motion to compel discovery responses and for sanctions, seeking to compel appellants to "properly and completely respond to written discovery." Specifically at issue were appellants' objections and responses to the following discovery requests:
INTERROGATORY NO. 5
Identify all banking, savings, checking, investment or other similar accounts on which a Defendant is signatory from 2006 to the Present.
ANSWER: Objection: this interrogatory seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence, is overly broad, unduly burdensome, and is designed solely to harass the defendants. This interrogatory also seeks private financial information unrelated to the instant litigation and information protected from compelled disclosure by the attorney client and work product privileges.
INTERROGATORY NO. 6
Identify all banking, savings, checking, investment or other similar accounts where Defendants deposited funds from the Paleses.
ANSWER: See response to Interrogatory No. 5. In further answering, the defendants deposited the Pales' [sic] funds into the firm IOLTA account.
INTERROGATORY NO. 7 *1024 Identify all clients of a Defendant that paid amounts owed for taxes into an account of a Defendant from 2006 to the Present.
ANSWER: Objection: this interrogatory seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence, is overly broad, unduly burdensome, seeks private financial and tax information of third persons not parties to the instant litigation, and the requested information is protected from compelled disclosure by the attorney client and work product privileges. Furthermore, this Interrogatory is designed solely to harass the defendants.
INTERROGATORY NO. 8
Identify all clients of a Defendant who have been audited for tax years in which a Defendant prepared the tax returns from 2006 to the Present.
ANSWER: Objection: this interrogatory seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence, is overly broad, unduly burdensome, seeks private financial and tax information of third persons not parties to the instant litigation, and the requested information is protected from compelled disclosure by the attorney client and work product privileges. Furthermore, this Interrogatory is designed solely to harass the defendants.
INTERROGATORY NO. 9
Identify all clients of a Defendant who have been an owner in business and did not pay estimated quarterly income taxes from 2006 to the Present.
ANSWER: Objection: this interrogatory seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence, is overly broad, unduly burdensome, seeks private financial and tax information of third persons not parties to the instant litigation, and the requested information is protected from compelled disclosure by the attorney client and work product privileges. Furthermore, this Interrogatory is designed solely to harass the defendants.
INTERROGATORY NO. 10
Identify all clients of a Defendant who have received Research and Development Credit from 2006 to the Present.
ANSWER: Objection: this interrogatory seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence, is overly broad, unduly burdensome, seeks private financial and tax information of third persons not parties to the instant litigation, and the requested information is protected from compelled disclosure by the attorney client and work product privileges. Furthermore, this Interrogatory is designed solely to harass the defendants.
INTERROGATORY NO. 11
Identify all clients of a Defendant who have not filed tax returns by the deadline or automatic extension date from 2006 to the Present.
ANSWER: Objection: this interrogatory seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence, is overly broad, unduly burdensome, seeks private financial and tax information of third persons not parties to the instant litigation, and the requested information is protected from compelled disclosure by the attorney client and work product privileges. Furthermore, this Interrogatory is designed solely to harass the defendants.
PRODUCTION REQUEST NO. 2
Produce all bank, financial, lender, loan or mortgage agreements in which Fedor or the Firm to maintain a minimum balance [sic] in an account that have [sic] or were in place from 2006 to the Present.
*1025 ANSWER: Objection: this Request is inarticulate and the defendants are unable to decipher what information the plaintiffs' [sic] are requesting. To the extent this Request seeks information regarding personal or firm financial information unrelated to this litigation, the Interrogatory [sic] seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence, is overly broad, unduly burdensome, and seeks private financial information. Furthermore, this Request is designed solely to harass the defendants.
PRODUCTION REQUEST NO. 5
To the extent that Defendant has failed to fully admit to every averment contained in the attached Complaint, provide all documents on which Defendant relied to form the basis of that answer and/or have [sic] reviewed or possessed regarding that issue.
ANSWER: Objection: this Request is overly broad, unduly Burdensome [sic], and seeks information protected from compelled disclosure by the work product doctrine. The defendants are not required to compile and label documents as a substitute for the plaintiffs' own investigation of their claims. Subject to and without waiving objection, see the underlying file, which is produced contemporaneously with these responses.
{¶ 8} With respect to production request Nos. 2 and 5, the Paleses specifically sought to compel appellants to produce IOLTA records, "copies of any checks and deposits that clients made payable to Defendant Fedor to cover tax liabilities" and a privilege log and/or unredacted copies of the redacted documents appellants had previously produced for in camera review.
{¶ 9} Appellants filed a combined opposition to the motion to compel and their own motion for a protective order, arguing that (1) the Paleses did not actually request the documents they were seeking; (2) the only discoverable IOLTA records were those related to the Paleses, which had been produced; (3) the discovery requests were overly broad, incomprehensible, sought irrelevant information and constituted an impermissible fishing expedition and (4) the discovery requests sought confidential information of nonparties that was protected from disclosure by the attorney-client privilege. A month later, appellants filed a "supplemental brief" in which they argued that the trial court should grant its motion for protective order because their clients' names and identifying information were trade secrets. The Paleses opposed appellants' supplemental brief.
{¶ 10} On May 16, 2017, the trial court ordered appellants to submit unredacted copies of the documents that they had previously produced along with a privilege log to the court. Appellants complied with the trial court's order. On their privilege log, appellants indicated that the IOLTA bank statements they produced had been redacted to remove references to transactions involving nonparty clients that showed "[c]lient deposit[s] revealing confidential financial information relating to the need for legal services," "[c]lient deposit[s] revealing retainer information for legal services," "[w]ithdrawals" showing "[p]ayment of client obligations revealing nature of legal services" and "service charge[s]" "[r]eveal[ing] client identity and nature of legal services."
{¶ 11} During a status conference a month later, the trial court granted appellants' oral motion for a hearing on the Paleses' motion to compel and appellants' motion for protective order.
{¶ 12} On July 17, 2017, the trial court held a hearing on the motions. The parties' arguments and the evidence presented at *1026 the hearing focused almost exclusively on whether appellants should be compelled to produce unredacted copies of bank statements from appellants' IOLTA account. In support of their privilege claim, appellants presented testimony from a single witness, Mary Cibella, an attorney whose practice focuses on professional responsibility matters. Attorney Cibella indicated that she was asked to opine "as to the propriety and/or the duties that related to the disclosure of the documents at issue in this case" and that she had reviewed the case docket, the briefs filed by the parties on the privilege issue, the case law cited in the briefs, Prof.Cond.R. 1.6 and various disciplinary cases and ethics advisory opinions addressing privilege issues in formulating her opinions in this case.
{¶ 13} Attorney Cibella testified regarding appellants' ethical obligation under Prof.Cond.R. 1.6 to maintain the confidentiality of information related to their representation of their clients. She explained that a lawyer's duty to preserve client confidentiality under the ethics rules extends to disclosures that do not in and of themselves reveal privileged information but could reasonably lead to the discovery of "sensitive information" by a third person, even if the information is already in the public domain. She indicated that an attorney has an obligation to take "all reasonable legal steps" to maintain the confidentiality of such information and that if "some event occurs that is going to trigger the information being released in * * * some way," e.g., a court orders the disclosure of the information, the attorney has an obligation to notify and consult with his or her client regarding the "potential abrogation of confidentiality."
{¶ 14} With respect to the unredacted IOLTA bank statements sought in this case,[3] Attorney Cibella testified that under Prof.Cond.R. 1.6, if a nonparty client did not give informed consent authorizing appellants to release the records, they would have a duty under Prof.Cond.R. 1.6 "to use all reasonable efforts against that request" and that this duty would not change even if a stipulated protective order was entered. She opined that if appellants were to "acquiesce in the production of these records," they would be in violation of Prof.Cond.R. 1.6 and potentially subject to disciplinary action. She noted, however, that Prof.Cond.R. 1.6 permits an attorney to comply with a court order requiring disclosure of confidential client information. After Attorney Cibella testified, appellants "rest[ed] on the motion."
{¶ 15} The Paleses then called Attorney Fedor to testify upon cross-examination. He testified regarding who has access to appellants' client information, what client information is disclosed to various persons and entities and appellants' procedures for receiving and depositing client funds and payments.
{¶ 16} On July 18, 2017, after reviewing the briefs and considering the evidence and arguments of counsel, the trial court issued an order granting the Paleses' motion to compel and denying appellants' motion for protective order. The trial court further ordered appellants to "release all documents in unredacted form to reveal all information responsive to plaintiffs' discovery requests" and to file a copy of the documents produced under seal with the trial court no later than July 21, 2017.
{¶ 17} Although the trial court did not specify the reasons for its ruling in its July *1027 18, 2017 journal entry, the trial court explained its reasoning in ordering the production of the unredacted IOLTA bank statements at the hearing as follows:
I understand Mr. Fedor has an obligation ethically to fight for the privilege of his clients and he's more than abundantly done that. He's requested a hearing, which I first viewed [sic] in-camera inspection. He requested a hearing, which I've allowed and an expert being called. I haven't heard any specific reasons other than these sort of general ideas about the sanctity of communications to not allow these documents. Information has to be requested, which my understanding it's the names, dates of the transactions, and the amount. Nothing else. And in the-under the auspices of a protective order, confidentiality agreement, which everyone agreed to in this matter. So I don't see any reason to protect them further from discovery to plaintiff.
And perhaps this effort, and I appreciate the efforts that Mr. Fedor has taken to protect his clients' privilege. And perhaps this can be short-circuited in a way once he informs his clients that this has become an issue, perhaps affidavits from the clients with respect to this specific issue at hand, they'd waive that and could expedite things, at least show the Court of Appeals what clients are worried about their information being revealed with a protective order, confidentiality agreement. So perhaps that might be a way to expedite this.[4]
But I'm going to order it produced.
{¶ 18} Appellants appealed, raising the following assignment of error for review:
The trial court committed reversible error by ordering Appellants to produce to Appellees, pursuant to discovery requests, attorney-client privileged names, addresses, and telephone numbers of certain of Appellants' clients dating back to 2006, as well as Appellants' financial account documents containing attorney-client privileged information (including IOLTA records) from 2006 to the present.
Law and Analysis
{¶ 19} In their sole assignment of error, appellants contend that the trial court erred in ordering the disclosure of "attorney-client privileged non-party client names, addresses and phone numbers" and "financial account records that include attorney-client privileged non-party identities and * * * transaction information" that is not subject to discovery under Civ.R. 26.[5] Appellants assert that the identities of their clients and information regarding their clients' financial transactions are "clearly attorney-client privileged" because disclosure of such information, will reveal "(a) that they have or may have tax problems, (b) that they have been or are under criminal investigation, (c) that they have been or are under IRS investigation, (d) that they have been or are under grand jury investigation, (e) that they have failed to file tax returns, and/or (f) that they did not or are not paying taxes." Appellants further assert that the "mere disclosure" of their clients' names and contact information "may bring disrepute" upon the *1028 clients because "given the nature of the Fedor firm practice, it will be immediately evident that the client has a tax issue."
The Attorney-Client Privilege
{¶ 20} Civ.R. 26(B)(1) permits parties to obtain discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." At issue in this case is the attorney-client privilege, one of the oldest privileges recognized in the common law. Burnham v. Cleveland Clinic, 151 Ohio St.3d 356, 2016-Ohio-8000, 89 N.E.3d 536, ¶ 17, citing Swidler & Berlin v. United States , 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998). In Ohio, the attorney-client privilege is governed by statute, R.C. 2317.02(A), which provides a "testimonial privilege," and in cases that are not addressed in R.C. 2317.02(A), by common law. State ex rel. Leslie v. Ohio Hous. Fin. Agency , 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 18.
{¶ 21} R.C. 2317.02(A)(1) provides that an attorney shall not testify "concerning a communication made to the attorney by a client in that relation or concerning the attorney's advice to a client." The common-law privilege is broader and " 'protects against any dissemination of information obtained in the confidential attorney-client relationship.' " Leslie at ¶ 26, quoting Am. Motors Corp. v. Huffstutler , 61 Ohio St.3d 343, 348, 575 N.E.2d 116 (1991). Although a lawyer may assert the privilege on behalf of a client, the privilege belongs to the client, and unless waived or an exception to the privilege applies, "it offers full protection from discovery." Burnham at ¶ 17.
{¶ 22} The purpose of the attorney-client privilege is to " 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.' " Plogger v. Myers , 8th Dist., 2017-Ohio-8229, 100 N.E.3d 104, ¶ 9, quoting Upjohn Co. v. United States , 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). To that end, "[t]he attorney-client privilege exempts from discovery certain communications between attorneys and their clients in the course of seeking or rendering legal advice." Natl. Union Fire Ins. Co. of Pittsburgh v. Ohio State Univ. Bd. of Trustees , 10th Dist. Franklin No. 04AP-1340, 2005-Ohio-3992, 2005 WL 1840220, ¶ 6, citing Boone v. Vanliner Ins. Co. , 91 Ohio St.3d 209, 744 N.E.2d 154 (2001) ; see also Miller v. Bassett , 8th Dist. Cuyahoga No. 86938, 2006-Ohio-3590, 2006 WL 1934788, ¶ 13 (" 'The attorney-client privilege bestows upon a client a privilege to refuse to disclose and to prevent others from disclosing confidential communications made between the attorney and client in the course of seeking or rendering legal advice.' "), quoting Frank W. Schaefer, Inc. v. C. Garfield Mitchell Agency, Inc. , 82 Ohio App.3d 322, 329, 612 N.E.2d 442 (2d Dist.1992).
The attorney-client privilege arises
" '(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.' "
State ex rel. Lanham v. DeWine , 135 Ohio St.3d 191, 2013-Ohio-199, 985 N.E.2d 467, ¶ 27, quoting Leslie at ¶ 21, quoting Reed v. Baxter , 134 F.3d 351, 355-356 (6th Cir.1998). "The attorney-client privilege is not an absolute privilege, and it applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice." Perfection Corp. v. Travelers Cas. & Sur. , 153 Ohio App.3d 28, 2003-Ohio-2750, 790 N.E.2d 817, ¶ 26 (8th Dist.). The party *1029 asserting the attorney-client privilege as a bar to discovery bears the burden of proving that it applies. Lemley v. Kaiser , 6 Ohio St.3d 258, 263-264, 452 N.E.2d 1304 (1983) ; Waldmann v. Waldmann , 48 Ohio St.2d 176, 178, 358 N.E.2d 521 (1976), citing In re Martin , 141 Ohio St. 87, 103, 47 N.E.2d 388 (1943) ; Holliday v. Gerth , 8th Dist. Cuyahoga No. 86570, 2006-Ohio-934, 2006 WL 496059, ¶ 3.
{¶ 23} A communication need not "pertain purely to legal advice" in order for it to be protected from disclosure by the attorney-client privilege. Morgan v. Butler , 2017-Ohio-816, 85 N.E.3d 1188, ¶ 20 (10th Dist.). " '[I]f a communication between a lawyer and client would facilitate the rendition of legal services or advice, the communication is privileged.' " State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth. , 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, ¶ 27, quoting Dunn v. State Farm Fire & Cas. Co. , 927 F.2d 869, 875 (5th Cir.1991). However, the privilege protects only attorney-client "communications" from disclosure, "it does not prevent disclosure of the underlying fact[s]." Plogger at ¶ 9.
{¶ 24} We apply a de novo standard of review when reviewing a claim of privilege. See, e.g., Ward v. Summa Health Sys. , 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, ¶ 13 ("Ordinarily, a discovery dispute is reviewed under an abuse-of-discretion standard. * * * However, if the discovery issue involves an alleged privilege, * * * it is a question of law that must be reviewed de novo."), citing Med. Mut. of Ohio v. Schlotterer , 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13 ; see also Sherwin-Williams Co. v. Motley Rice LLC , 8th Dist. Cuyahoga No. 96927, 2012-Ohio-809, 2012 WL 682747, ¶ 34.
"Special" Attorney-Client Relationship
{¶ 25} Appellants maintain that they should not be required to respond to any of the discovery requests at issue because doing so would disclose the identities of their nonparty clients. Appellants contend that due to the "unique and specialized nature of [appellants'] law practice," the "higher-profile" status of their clients and the "special" attorney-client relationship that exists between them, the identities of all of their nonparty clients are protected from disclosure under the attorney-client privilege.[6]
{¶ 26} In general, a client's identity is not protected by the attorney-client privilege. See, e.g., Lemley , 6 Ohio St.3d at 264, 452 N.E.2d 1304 ; see also 1 Paul R. Rice, Attorney-Client Privilege in the United States, Section 6:15, at 992-997 (2014). This is because, as noted above, the privilege extends to "communications" made in the attorney-client relationship, not the fact that an attorney-client relationship exists. See In re Burns , 42 Ohio Misc.2d 12, 15, 536 N.E.2d 1206 (C.P.1988). Further, identification of the client is usually required when invoking the attorney-client privilege in order to establish the existence of an attorney-client relationship. As with a client's name, a client's address, telephone number and fee information are generally not protected by the privilege. See, e.g., *1030 In re Subpoena Duces Tecum Served Upon Attorney John F. Potts ("In re Potts") , 6th Dist. Lucas No. L-01-1033, 2002 WL 737058, at *4 (Apr. 26, 2002), aff'd in part, rev'd in part sub nom. In re Subpoena Duces Tecum Served Upon Attorney Potts , 100 Ohio St.3d 97, 2003-Ohio-5234, 796 N.E.2d 915 (2003). Similarly, the fact of consultation and the general nature of the work performed by the attorney are not usually protected by the privilege. See, e.g., Libertarian Party of Ohio v. Husted , S.D.Ohio No. 2:13-cv-953, 2014 WL 3928293, at *5-6 (Aug. 12, 2014), citing In re Grand Jury Proceedings-Gordon , 722 F.2d 303, 305, 308 (6th Cir.1983) ; 1 Paul R. Rice, Attorney-Client Privilege in the United States, Sections 6:21-6:22, at 1042-1050 (2014); see also State v. Walls, 6th Dist., 2018-Ohio-329, 104 N.E.3d 280, ¶ 67 (the attorney-client privilege "protects the substance of communications-'not the fact that there has been communication' "), quoting Burton v. R.J. Reynolds Tobacco Co. , 170 F.R.D. 481, 484 (D.Kan.1997).
{¶ 27} Appellants acknowledge this general rule but contend that an exception should be recognized that protects a client's identity from disclosure under the attorney-client privilege due to the nature of their practice and the "unique circumstances of this case." Appellants assert that they have a "specialized" practice and "only handle[ ] tax problems." According to appellants, clients retain "specialized attorneys such as [appellants]" "[t]o avoid a potentially embarrassing tax situation," to defend IRS investigations and to avoid or resolve criminal investigations or prosecutions. Appellants assert that their clients are business owners, judges, doctors and attorneys "who occupy positions of trust and status in their communities," and that if a person is identified as a client of appellants, "it will be immediately evident that the client has a tax issue"-a fact that could be "particularly embarrassing or professionally damaging to their careers." Appellants further assert that from the moment a client retains the Fedor law firm "the client's identity and a tax issue are forever linked" and that it is this "special dynamic" that "leads to the conclusion" that the identities of all of appellants' current and former clients fall within the ambit of protection of the attorney-client privilege.
{¶ 28} In both Waldmann and Lemley , the Ohio Supreme Court recognized that there were circumstances in which a client's identity could be subject to the attorney-client privilege. In Waldmann, the court reversed a contempt finding against an attorney in domestic relations matter for refusing to reveal his client's subsequent address, i.e., the address at which the client resided when she moved after filing her complaint. Waldmann , 48 Ohio St.2d at 177-179, 358 N.E.2d 521. The court found that the client's address was subject to the attorney-client privilege because it was necessary to protect the client's safety. As the court explained:
Even when a case falls beyond the strict letter of R. C. 2317.02(A), the principles of that section apply if the case is plainly within the reason and spirit of it. R. C. 2317.03(H).
The confidentiality of a client's address in a domestic relations matter, especially a divorce action, can be a vital feature of the action; it is not uncommon for a spouse who fears for her or his safety to need assurance that their whereabouts will not be disclosed. If a client feels that confidentially divulged matters will not be protected, facts may be withheld which are necessary to competent representation. When the attorney-client privilege exists, the privilege has been held to encompass the protection of the address of the client.
Id. at 177-178, 358 N.E.2d 521, citing In re Heile , 65 Ohio App. 45, 49, 29 N.E.2d 175 (1st Dist.1939).
{¶ 29} In Lemley , two parents turned their infant child over to attorneys to facilitate *1031 the private placement of the child for adoption with an unidentified prospective adoptive parent. The parents changed their minds and wanted the child back, but the attorneys refused to assist them. One of the parents filed a complaint seeking a writ of habeas corpus on behalf of the child. The attorneys invoked the attorney-client privilege and refused to disclose the name and address of the person or persons who had the child. Lemley , 6 Ohio St.3d at 258-259, 452 N.E.2d 1304. The trial court issued the writ, commanding the attorneys to either return the child or reveal his location to the court. Id. at 259, 452 N.E.2d 1304. The attorneys appealed and the court of appeals affirmed. Id. In affirming the issuance of the writ against the attorneys, the Ohio Supreme Court noted that the determination of whether client's identity is privileged turns upon the circumstances of the case:
In most instances, the client's name or identity "is not one of the facts about which the client seeks legal assistance; the legal advice will in no way depend on whether the client's name is Jones or Smith." Saltzburg, Communication Falling Within the Attorney-Client Privilege , 66 Iowa L. Rev. 811, 821 (1981). If a case falls plainly within the reason and spirit of R.C. 2317.02(A), its principles shall apply even though a client's name and address may. not, in most circumstances, be within the strictures of R.C. 2317.02(A). Waldmann, supra, at 177 [358 N.E.2d 521].
Id. at 264, 452 N.E.2d 1304. The Ohio Supreme held that the attorney-client privilege did not protect the names and addresses of the prospective adoptive parents in that case because the privilege could not be used to conceal cooperation in wrongdoing. Id. at 265-266, 452 N.E.2d 1304.
{¶ 30} Simply because a client seeks legal advice from a tax attorney does not, as appellants contend, imply that the client has committed a crime, has violated the law or is otherwise "in trouble" with the IRS. See, e.g., United States v. Cedeno , 496 F.Supp.2d 562, 568 (E.D.Pa. 2007) ("The mere fact of consultation with a lawyer does not implicate the defendants' families in any crime; * * * '[s]eeking legal advice is as much a first step in demonstrating innocence or the non-existence of a problem as it is an admission of guilt.' ") quoting In re Shargel , 742 F.2d 61, 64 (2d Cir.1984), fn. 3. Appellants cite no authority to support their claim that the attorney-client privilege applies to protect a client's identity whenever it might lead others to speculate that the client has consulted with an attorney because the client has some type of "tax problem" or other issue that might be potentially embarrassing to a client.
{¶ 31} Nevertheless, we need not decide in this case whether the attorney-client privilege would protect a client's identity from disclosure where the client consults an attorney who has a "specialized" law practice because even if the attorney-client privilege protected against such disclosures, appellants did not meet their burden of establishing that it applied in this case. Although both appellants and amicus curiae The Ohio State Bar Association ("OSBA") make numerous assertions in their brief that "Mr. Fedor's practice is highly specialized and sensitive in nature," that "simply meeting with his firm was a sensitive matter which would indicate the nature of the client's legal problems," that "Mr. Fedor's clients sought his representation for his specialized legal advice that focuses solely on highly-technical and high-stakes tax matters" and that "[b]y simply meeting with these attorneys, the very substance and subject of representation is known," appellants did not present evidence *1032 establishing these facts below. The only evidence appellants presented in support of their claim that the information and documents sought by the Paleses are protected from disclosure by the attorney-client privilege was the testimony of Attorney Cibella. Attorney Cibella, however, testified only regarding appellants' ethical obligation to maintain the confidentiality of information received from a client under Prof.Cond.R. 1.6.
{¶ 32} The duty of confidentiality under Prof.Cond.R. 1.6 places ethical restrictions on a lawyer's disclosure of information relating to the representation of the client. Pursuant to Rule 1.6(a), "[a] lawyer shall not reveal information relating to the representation of a client, including information protected by the attorney-client privilege under applicable law, unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation," or the disclosure is otherwise permitted or required by the rule. Prof.Cond.R. 1.9 governs an attorney's obligations to former clients. Prof.Cond.R. 1.9(c)(2) prohibits a lawyer from revealing information relating to the representation of a former client "except as these rules would permit or require with respect to a client."
{¶ 33} However, a lawyer's ethical duty of confidentiality does not define the scope of the attorney-client privilege. Although both a lawyer's ethical duty of confidentiality and the attorney-client privilege address information that the lawyer must keep confidential and are protective of a client's ability to communicate freely with, and confide in, his or her lawyer, there are critical differences between the two in terms of their applicability and the scope of the information covered.
{¶ 34} The attorney-client privilege only protects the "communications" between the client and lawyer for the purpose of rendering legal advice. The ethical duty of confidentiality is much broader than the privilege; it applies to all "information relating to the representation of a client." As explained in Comment 3 to the rule:
The attorney-client privilege * * * appl[ies] in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. The confidentiality rule, for example, applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. A lawyer may not disclose such information except as authorized or required by the Ohio Rules of Professional Conduct or other law.
See also Prof.Cond.R. 1.6, Comment 4 ("[Prof.Cond.R. 1.6(a) ] prohibits a lawyer from revealing information relating to the representation of a client. This prohibition also applies to disclosures by a lawyer that do not in themselves reveal protected information but could reasonably lead to the discovery of such information by a third person."). Accordingly, Prof.Cond.R. 1.6 does not define what is privileged or shield an attorney from complying with a court discovery order. See Prof.Cond.R. 1.6(b)(6); see also United States v. Servin , 3d Cir., 721 Fed.Appx. 156, 159 (2018), fn. 6.
{¶ 35} The record contains very limited information regarding the nature of appellants' law practice. Attorney Cibella did not offer any testimony regarding appellants' alleged reputation for handling only "sensitive," "specialized" tax matters. Indeed, the only evidence in the record even remotely related to this issue was presented by the Paleses, during their questioning *1033 of Attorney Fedor upon cross-examination at the hearing on their motion to compel:
Q. Have you identified that you represent certain clients to third parties not in the firm?
A. I don't understand your question.
Q. Outside of your firm, have you ever said to somebody I represent Bob Smith, he's my client?
A. Typically not because my clientele is-they're business owners, they're sometimes judges, physicians, other attorneys, and if I gave their name out, they would know why they were seeing me. It's a special relationship, unlike a typical attorney-client relationship.
{¶ 36} Unsupported assertions are insufficient to establish a claim of attorney-client privilege. Attorney Fedor did not explain this "special relationship, unlike a typical attorney-client relationship" and appellants offered nothing beyond Attorney Fedor's conclusory assertion to establish that such a relationship in fact existed with respect to each of their current and former clients. Appellants did not submit any affidavits or other evidence supporting their claim that, based on the reputation of the Fedor law firm and the "specialized" nature of its practice, the mere fact that a client consulted with the Fedor law firm would reveal privileged information regarding the representation. Likewise, there was no evidence that the fact that a client consulted with the Fedor law firm would be information the client would necessarily want or expect would be protected from disclosure under the attorney-client privilege.
{¶ 37} Attorney Fedor testified that "[e]ach different client" he represents "has different issues," e.g., "[y]ou could be going through an audit, you might not file tax returns, you might not remit your payroll requirements, you can be under criminal investigation" but that this "[h]as nothing to do with privilege per se." Attorney Fedor further testified that, with respect to certain of his clients, the fact that he represented them had already been disclosed to the IRS or was a matter of public record for clients he had represented in court. He further testified that none of his clients had specifically asked him "to conceal [the client's] identity." Attorney Cibella acknowledged that a client's identity is not automatically privileged and that whether a lawyer can reveal the identity of a client without "permission" is "fact dependent" for each individual client. Attorney Cibella further testified that she had not reviewed any of the documents at issue and her testimony did not address any of the facts and circumstances relevant to a determination of whether the information and documents at issue are protected from disclosure under the attorney-client privilege-as opposed to a lawyer's ethical duty of confidentiality under Prof.Cond.R. 1.6.
{¶ 38} Accordingly, we reject appellants' argument that the identities of appellants' clients and the documents at issue are "within the protective ambit of the attorney-client privilege," In re Grand Jury InvestigationNo. 83-2-35 , 723 F.2d 447, 455 (6th Cir.1983), and, therefore, not discoverable, based solely on the "specialized" nature of appellants' tax practice.[7]
*1034 Other Exceptions
{¶ 39} Ohio courts and others have, however, recognized an exception to the general rule that a client's identity is not protected from disclosure by the attorney-client privilege where the client's identity is disclosed to the attorney as part of a confidential communication and is one of the circumstances regarding which the client seeks legal advice. See, e.g., Miller v. Begley , 93 Ohio App.3d 527, 529, 639 N.E.2d 139 (12th Dist.1994) (client's identity was protected by the attorney-client privilege where trial court found disclosure would expose client to civil and criminal liability and was "integrally involved in the matter about which he [sought] the attorney's advice"); Burns , 42 Ohio Misc.2d at 15-16, 536 N.E.2d 1206 (attorney was not required to disclose client's identity where one of the matters about which client, who was allegedly the perpetrator of various sex-related crimes, consulted with attorney was whether to reveal his identity); see also In re Grand Jury InvestigationNo. 83-2-35 , 723 F.2d at 452-453 (under the "legal advice exception," a client's identity is protected from disclosure where there is a strong possibility that identification of the client would implicate the client in the matter for which legal advice was sought); see also In re Potts, 2002 WL 737058, at *4 (discussing the "legal advice exception"). Courts have also held that a client's identity is protected from disclosure where "so much of the actual attorney-client communication has already been disclosed that identifying the client amounts to full disclosure of the communication." See, e.g., United States v. Liebman , 742 F.2d 807, 809 (3d Cir.1984) ; In re Grand Jury Investigation No. 83-2-35 at 453.
{¶ 40} In Liebman , for example, the Third Circuit Court of Appeals held that the attorney-client privilege prohibited a law firm that specialized in tax law and the investigation and evaluation of real estate partnerships for tax purposes from complying with an IRS summons that sought the names of all the firm's clients who paid fees in connection with the acquisition of certain tax shelters. Id. at 808-810. It was established that the firm charged fees only to clients who invested in the tax shelters and that each of those clients had been advised that the fees were deductible as a legal expenses. Id. at 808. The court indicated that if the summons had merely requested the names of clients who paid fees, the information would not be protected by the attorney-client privilege. Id. at 809. However, the summons was "more specific." It identified "not only * * * the subject matter of the attorney-client communication, but describe[d] its substance," i.e., that taxpayers were advised by the law firm that the fee was deductible for income tax purposes. Id. As such, the clients' identities were protected by the attorney-client privilege. As the court explained:
If appellants were required to identify their clients as requested, that identity, when combined with the substance of the communication as to deductibility that is already known, would provide all there is to know about a confidential communication between the taxpayer-client and the attorney. Disclosure of the identity of the client would breach the *1035 attorney-client privilege to which that communication is entitled.
Id. at 810.
Specific Discovery Requests at Issue
Interrogatory Nos. 5 and 6
{¶ 41} Applying these principles to the specific discovery requests at hand, we conclude that interrogatory Nos. 5 and 6, which simply seek the identification of appellants' bank accounts, do not seek information protected from disclosure by the attorney-client privilege. Accordingly, the trial court did not err in overruling appellants' objections to the discovery of this information based on the attorney-client privilege.
Interrogatory Nos. 8 and 10
{¶ 42} Likewise, appellants have not shown that the attorney-client privilege bars disclosure of the factual information sought in interrogatory Nos. 8 and 10. Accordingly, the trial court did not err in overruling appellants' objections to the discovery of this information based on the attorney-client privilege.
The IOLTA Records
{¶ 43} Similarly, appellants have not shown that the IOLTA records at issue are protected from disclosure by the attorney-client privilege. The unredacted IOLTA records consist of bank statements issued by Key Bank for the law firm's IOLTA account. They list the dates and amounts of various deposits, withdrawals, charges and transfers into and out of the account. Although Attorney Cibella testified that her "understanding" was that "the records are with respect to moneys that may have been given to Mr. Fedor to resolve some other pending tax litigation, tax disputes," she did not review the IOLTA bank statements and acknowledged that retainers, advances for expenses and any other client money that comes into a lawyer's possession for future disbursement must be placed into the lawyer's IOLTA account and disbursed from that account.
{¶ 44} Although certain of the line items on the IOLTA bank statements identify a client (by listing the name of the client) with which a particular transaction is associated, they do not reveal the purpose for which any funds have been deposited into or withdrawn from the account, any direction by the client with respect to how funds are to be distributed, the nature of the legal services with which any of the transactions are associated or the subject matter or substance of any attorney-client communication.
{¶ 45} Although we are aware of no Ohio appellate court that has addressed the issue, federal courts that have considered the issue have long held that bank records relating to the transfer of funds into or out of a lawyer's trust account are not in and of themselves privileged communications. See, e.g., SEC v. First Sec. Bank of Utah, NA. , 447 F.2d 166, 167 (10th Cir. 1971), cert. denied , 404 U.S. 1038, 92 S.Ct. 710, 30 L.Ed.2d 729 (1972) ; see also Harris v. United States , 413 F.2d 316, 320 (9th Cir. 1969) ("[C]ourts have repeatedly held that checks and bank records are not subject to the protection of the attorney-client privilege."); In re Grand Jury Subpoena , 831 F.2d 225, 227-228 (11th Cir. 1987) ("An attorney who acts as his client's agent for receipt or disbursement of money or property to or from third parties is not acting in a legal capacity, and records of such transactions are not privileged."); Nimmer v. SEC , D.Neb. No. 11-CV-162, 2011 WL 3156791, at *3 (July 26, 2011) ("When an attorney acts as a conduit for a client's funds, attorney-client privilege does not apply."); Grewal & Assocs., P.C. v. Hartford Cas. Ins. Co., 2010 WL 3909491, at *3 (Sept. 30, 2010) (noting that "[f]or at least forty *1036 years * * *, the federal courts have squarely rejected the recognition of any privilege attaching to an attorney's bank records, whether those records relate to the attorney's general account or client trust accounts"). This is because the attorney-client privilege extends only to " 'the substance of matters communicated to an attorney in professional confidence' " and "[t]he deposit and disbursement of money in a commercial checking account are not confidential communications." First Sec. Bank at 167, quoting Colton v. United States , 306 F.2d 633, 637 (2d Cir.1962).
{¶ 46} As one court explained in rejecting a claim that bank records relating to a lawyer's IOLTA account contained privileged or confidential client information:
Generally, there is no legitimate expectation of privacy in the contents of checks, deposit slips or bank statements in a bank's possession. * * * Checks are negotiable instruments used in commercial transactions, voluntarily conveyed to banks, and exposed to the banks' employees in the ordinary course. * * * Case law establishes that [the lawyer's] bank records are not protected by the attorney-client privilege. * * * The [lawyer's] arguments ignore the basic nature of such banking transactions. They are not confidential communications among attorney and client. They are commercial transactions which disclose the identity and other identifiers of the parties to the transaction to the third party banking institution. Even if the transactions could be viewed by a large stretch of the imagination to be communicative, in no way could they be considered confidential. If the [lawyers] and their clients sought confidentiality regarding the monetary transactions, they blew any cover of secrecy by utilizing a commercial banking enterprise.
Najjar v. United States , S.D.Ind. No. 1:02-cv-1807-JDT-WTL, 2003 WL 21254772, at *2-3 (Apr. 11, 2003) ; see also SEC v. W Fin. Group, LLC , N.D.Tex. No. 3-08-CV-0499-N, 2009 WL 636540, at *1-2 (Mar. 9, 2009) (rejecting contention that bank records relating to the transfer of funds into and out of attorney's IOLTA account were privileged).
{¶ 47} Similarly, the Ninth Circuit Court of Appeals, in affirming the denial of a motion to quash an IRS summons issued to the Bank of America for production of an attorney's bank records, stated:
It is well settled that there is no privilege between a bank and a depositor[.] * * * In refusing to extend the privilege, we stated [in Harris v. United States , 413 F.2d 316 (9th Cir. 1969) ]:
The reasons which led to the attorney-client privilege, such as the aim of encouraging full disclosure in order to enable proper representation, do not exist in the case of a bank and its depositor. Moreover, the client, by writing the check which the attorney will later cash or deposit at the bank, has set the check afloat on a sea of strangers. The client knows when delivering the check, and the attorney knows when cashing or depositing it, that the check will be viewed by various employees at the bank where it is cashed or deposited, at the clearing house through which it must pass, and at his own bank to which it will eventually return. Thus, the check is not a confidential communication, as is the consultation between attorney and client.
Id. at 319-20. * * * [T]here is no confidentiality where a third party such as a bank either receives or generates the documents sought by the IRS. Because the attorney-client privilege applies only where the communication between attorney and client is confidential, there is no privilege protecting the documents the *1037 IRS seeks in the present action. * * * "[T]he attorney-client privilege ordinarily protects neither the client's identity nor information regarding the fee arrangements reached with the client." United States v. Horn (In re Horn ), 976 F.2d 1314, 1317 (9th Cir. 1992).
Reiserer v. United States , 479 F.3d 1160, 1165 (9th Cir. 2007).
{¶ 48} Appellants and the OSBA argue that the use of an IOLTA account to process client funds does not waive the attorney-client privilege because the attorney-client privilege includes communications made through a client's or attorney's agent. However, waiver is not the issue here. Waiver can occur only when the attorney-client privilege would otherwise apply. As the above-cited cases demonstrate, IOLTA banking transactions are not confidential communications between an attorney and his or her client. Accordingly, the attorney-client privilege does not apply. Appellants and the OSBA have not cited any authority to the contrary. The trial court did not err in overruling appellants' objections to the discovery of this information based on the attorney-client privilege.
Interrogatory No. 7 and Financial Documents Relating to Payments to Satisfy Tax Liabilities
{¶ 49} We conclude that interrogatory No. 7 and the Paleses' request for "copies of any checks and deposits that clients made payable to Defendant Fedor to cover tax liabilities" invade the attorney-client privilege. With respect to these requests, we conclude so much has already been disclosed in the requests themselves that identification of clients or production of documents in response to these requests would in effect reveal privileged attorney-client communications, i.e., by linking clients to the content of particular attorney-client communications. Because there has been no claim or showing that any clients waived the attorney-client privilege with respect to such communications, the trial court erred in ordering appellants to respond to those requests.
Interrogatory Nos. 9 and 11
{¶ 50} Likewise, we conclude that interrogatory Nos. 9 and 11 invade the attorney-client privilege. If appellants were to identify clients who meet the descriptions set forth in these requests, they would directly, or by reasonable inference, reveal the content of privileged attorney-client communications. Because there has been no claim or showing that any clients waived the attorney-client privilege with respect to such communications, the trial court erred in ordering appellants to respond to those requests.
{¶ 51} Appellants' assignment of error is sustained in part and overruled in part. We reverse the trial court as to interrogatory Nos. 7, 9 and 11 and the Paleses' request for "copies of any checks and deposits that clients made payable to Defendant Fedor to cover tax liabilities." We affirm the trial court's decision as to interrogatory Nos. 5, 6, 8, 10 and the IOLTA bank statements and remand the case for further proceedings consistent with this opinion.
{¶ 52} Judgment affirmed in part, reversed in part and remanded.
TIM McCORMACK, J., and FRANK D. CELEBREZZE, JR., J., CONCUR

The Paleses' discovery requests were actually directed to "Defendant Aviation Personnel, LLC." As Aviation Personnel, L.L.C. was not a party to the action, appellants indicated in their discovery responses that they assumed the Paleses had intended to propound the discovery to all of the named defendants.

Pursuant to the stipulated protective order, either party could designate documents as "confidential-subject to protective order" "upon making a good faith determination that the documents contain information protected from disclosure by statute or that should be protected from disclosure as confidential personal information (including but not limited to Social Security numbers, benefits information, and similar confidential personal information), medical or psychiatric information, personnel records, proprietary business information, financial information, and/or trade secrets." Documents so designated could be used or disclosed by the opposing party, counsel and other authorized third parties only to prepare for and to conduct discovery and the trial and any appeal in the case. Any court filings referencing documents covered by the protective order were to be filed under seal. Use of such documents at trial was to be subject to further court order.

Attorney Cibella did not specifically address the propriety of responding to any of the discovery requests at issue or the disclosure of any other documents in the case. She indicated that her understanding was that the Paleses were "asking for the trust records." She further testified that she had not seen the IOLTA bank statements at issue.

There is nothing in the record to indicate that any affidavits were obtained.

The issue before this court is whether the documents and information at issue are protected from discovery under the attorney-client privilege. Accordingly, we do not consider whether the requested information and documents are otherwise discoverable, e.g., whether the discovery requests at issue seek information that is relevant to the issues in the case or appear reasonably calculated to lead to the discovery of admissible evidence.

Appellants make only a blanket claim that the identities of all of their current and former clients dating back to 2006 are protected from disclosure by the attorney-client privilege. Appellants have not made any claim or presented any evidence that the identity of any particular client should be privileged based on the specific facts and circumstances relating to that client.

Appellants also argue that we should overturn the trial court's order because it will allow appellees to "contact appellants' current and past clients, harass said clients under the guise of 'discovery,' and threaten to publicly reveal the fact that said non-[party] clients sought and/or received legal services from Appellants." Appellants assert that disclosing the requested information "will condemn [their] past and future clients to a fate of subpoenas, subpoenas duces tecum, and public exposure." Simply because appellants' current or former clients may be contacted as potential witnesses if their identities are disclosed does not impact the determination of whether their identities are protected from disclosure by the attorney-client privilege. The concerns appellants raise with respect their clients in this case would apply to any witness in any case. The Ohio Rules of Civil Procedure have protections in place to protect third parties from harassment or other discovery abuses. Further, a stipulated protective order is in place in this case. To the extent that any of the information or documents at issue are produced subject to the stipulated protective order, the Paleses would be bound by the terms of that protective order.